# TRUMAN HENSON V. THE STATE.

No. 23456. Delivered November 6, 1946.
Rehearing Granted January 22, 1947.
Rehearing Denied April 16, 1947.

GRAVES, Judge, dissenting on rehearing.

*Florence & Florence,* of Gilmer, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is an assault with intent to murder. The punishment assessed is confinement in the state penitentiary for a term of two years.

The record reflects that appellant was a nephew by marriage of the injured party; that sometime in the year 1944 they had some trouble in which appellant shot Alex Box, his uncle; that as a result of that difficulty appellant was indicted for the offense of an assault with intent to murder; that the trial of said case had been set for February 12, 1945, but had been reset for February 13, of which appellant was informed by his attorneys, but the injured party had not been so notified. Consequently, since he was the State's main witness, he went to Quitman to testify for the State. However, when he arrived at the court house he was informed that the case had been reset and would be tried on the following day. Sometime in the afternoon, the injured party, accompanied by his wife and daughter, started for home in their Ford Coupe. On the way to their home, they had to pass near appellant's house; that as they were driving along the road near appellant's home, the injured party saw appellant suddenly emerge from some brush with a double-barreled shotgun; that he saw appellant level it at them, whereupon he told his wife and daughter to duck under the dashboard, and at the same time he placed his arm back of their shoulders, shoving them under the dashboard, when appellant fired, the first shot striking the windshield, breaking out nearly all of the glass; that Box (the injured party) undertook to get out of the car when appellant fired the second shot, striking him in the back of the head. The injured party, as well as his wife and daughter, got out of the car; that when they did so appellant ran across

the road towards his home, where his wife was standing in or near to the yard of their home.

Appellant's plea was self-defense based upon apparent danger. He also filed a plea for a suspension of sentence in the event of a conviction.

He brings forward four bills of exception. By Bill No. 1 he complains of the action of the trial court in overruling his motion for a new trial based upon what he claims to be newly discovered evidence. This evidence is set out at length in the affidavit of Ross McMullen, which is attached to the motion and made a part thereof. He states in his affidavit in substance that he was 29 years of age, had resided in Wood County all of his life, and was acquainted with Truman Henson, as well as his father, M. O. Henson; that he was engaged in buying, cutting and selling logs; that on the day in question he was in the immediate vicinity of the place where the difficulty took place; that about sundown he was about 100 years west of the public road passing in front of Truman Henson's house; that he saw Alex Box, his wife and daughter, coming along the road in a Ford Coupe; that he saw appellant standing about five to fifteen feet west of the road; that Box was driving the car; that when they reached a point almost opposite Truman Henson, the front end of the Coupe turned and headed toward appellant; that if Box had continued to drive on and appellant had not moved, the car would have run over him; that after the front end of the car got out of the road it stopped, and he (affiant) saw Box reach over toward the switch and the car stopped running; that Box reached back of the seat with his right hand and when he did so, Henson raised a shotgun to his shoulder and fired; that after Henson had fired the second shot he (affiant) ran back into the woods; that he saw Box open the left door of the car and get out; that the mother and daughter got out of the car on the right side; that the daughter and father went on down the road while Mrs. Box walked in front of Henson's house and conversed with appellant for a few minutes; that this was all he (affiant) knew.

The facts set forth in the affidavit which was attached to the motion are in accord with the testimony of appellant and his wife, and are slightly different from the testimony given by the State's witnesses. The State's evidence is to the effect that when appellant raised his gun to shoot, Alex Box threw up his arm back of the shoulders of his wife and daughter and shoved their heads under the dashboard. Appellant's theory,

supported by the testimony of himself and his wife, was that Box reached back of the seat before he raised his gun to shoot. It occurs to us that the newly discovered evidence would have corroborated the testimony of appellant and his wife, was cumulative of their testimony, and would therefore not be legal grounds for a new trial. A similar question to the one here presented was before this court in the case of Turner v. State, 37 Tex. Cr. R. 451, 36 S. W. 87. In that case, as in the present, appellant's defense was self-defense. The State's evidence in that case showed that the accused made an unprovoked and unjustified assault upon Hilliard Brown. The evidence of the defendant's witness was that Brown made an assault upon appellant with a knife, whereupon appellant drew his pistol. Subsequent to the trial appellant learned of two witnesses who claimed to have seen the difficulty and saw Brown draw his knife and cut at appellant before appellant drew his pistol. He set this up in his motion for a new trial. The court held that the testimony would have been cumulative. For other authorities, see Branch's Ann. Tex. P. C., p. 130, Sec. 203; Harrolson v. State, 54 Tex. Cr. R. 452; Roberts v. State, 57 Tex. Cr. R. 199, 122 S. W. 388.

It seems to be the rule in this state that an application for a new trial based on newly discovered evidence is addressed to the sound discretion of the trial court, and unless an abuse of discretion is shown, this court will not reverse his conclusion on the subject. See Roberts v. State. 190 S. W. (2d) 116, and cases there cited. It is not reversible error to overrule a motion for a new trial based on newly discovered evidence unless, in the opinion of the court, it would likely produce a different result upon another trial. See Branch, supra, p. 128, sec. 201.

Bills of Exception Nos. 2 and 3 relate to the same subject matter and may be disposed of together. These bills show that appellant had filed a plea for a suspension of sentence in the event of his conviction. That he placed his general reputation as a law-abiding citizen in issue and proved by a number of witnesses that his reputation in that respect was good. The State undertook to controvert the same, and called the sheriff of the county, who testified that he knew appellant; that he was acquainted with appellant's general reputation as a peaceable and law-abiding citizen and that it was bad. Thereupon cousel for appellant inquired of him whom he had heard say that appellant's reputation was bad, to which the witness replied, "W. H. Bullock of Winnsboro, * * * so did Frank Weems * * * and Wesley Taylor." Counsel then elicited from the witness the fact that Bullock lived some 25 miles from where appellant lived and

that the others lived about 15 miles distant; that Bullock had been sheriff of the county and the other two were peace officers. The witness further testified that on the occasion of the appel- lant's arrest he told the witness that if he were caught down there in the woods without a gun he would kill him. Appellant objected to the testimony relative to the threat. The court sus- tained the objection and instructed the jury not to consider it. It occurs to us that the court, by instructing the jury not to consider it, withdrew the evil effect thereof, if any.

Appellant also requested the court to withdraw from the jury all of the testimony of the sheriff relative to his general reputa- tion, which the court declined to do, whereupon appellant duly excepted. His contention seems to be that the peace officers who discussed his reputation did not live in the same community with appellant and what they told the witness was hearsay. He cites us to the case of Guajardo et al v. State, 96 Tex. Cr. R. 230, 257 S. W. 247, as sustaining his contention. We have examined this case and believe it is distinguishable from the instant case on the facts. In that case, the witness did not know the defend- ants; that he lived in another county, but made some investiga- tion of their reputation by inquiring of the Sheriff and County Attorney of Brooks County; that all he had was their state- ments. It occurrs to us that what the Sheriff and County At- torney told him that they heard relative to appellant's general reputation was hearsay, but in the instant case, the witness definitely stated that he knew appellant and knew his general reputation as a peaceable and law-abiding citizen to be bad. That made his testimony admissible on that issue. Thereupon appellant took the witness on cross-examination and elicited the facts complained of as being hearsay. He sought to impair the testimony of said witness by eliciting the same and then re- questing that it be withdrawn by the court. It is our opinion that, under the circumstances disclosed by the bill, the court was correct in holding that the objection went more to the weight than to its admissibility.

By Bill of Exceptions No. 4 appellant complains of the tes- timony given by Alex Box to the effect that on the day in ques- tion, he went to Quitman to attend court as a State's witness against appellant, who was charged with an assault to murder him (Box); that the case was set for trial on that day, Monday, February 12, 1946, to which appellant objected because it had not been shown that defendant knew anything about Box going to court, etc. This bill is qualified by the court, who certifies that the District Attorney had informed the court that Mrs. Box

would testify that at the time of the shooting on February 12, 1946, the defendant stated to her, "I told you not to go to court today." The record shows that she did testify that immediately after the shooting, she talked to appellant and he remarked to her, "I told you not to go to court today." To which she replied, "You didn't tell us anything; you sent a man who told us not to go to court, but we had to go." Thereupon he remarked, "No, by God, you didn't." This clearly indicates that he knew that Alex Box had gone to Quitman to attend court as a witness. Appellant sought to account for his presence in the brush near the road with a shotgun with the statement that he was trying to kill a chicken hawk and was not lying in wait for Box. Consequently it was admissible on that issue. Of course, if appellant had no knowledge that Box had gone to court, then a most serious question would have been presented.

No error appearing from the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant urges that we were in error in holding that the trial court properly overruled his motion for new trial based upon the newly discovered evidence of the witness McMullen.

Appellant brought himself squarely within the rule that the evidence sought from the said witness was newly discovered, and that there was no lack of diligence in the failure to sooner discover it.

It must be borne in mind that appellant's defense was based upon the claim that he acted in self defense in shooting Box, predicated upon apparent danger as it appeared to appellant from his standpoint at the time of the shooting. There is no conflict in the evidence that Box placed his hand back of his wife and daughter. It was the contention of the State, based upon the testimony of Box, his wife and daughter, that he did not reach behind them until appellant raised his gun in a shooting position, and that he then made the movement to push them down under the hood of the car to protect them from the

threatened shot. The car in which Box, his wife and daughter were riding was a coupe with a shelf behind the single seat. It was the contention of appellant and his wife that appellant did not raise his gun to shoot until Box "threw his hand over behind the seat of the car * * * and I shot him. I figured he was getting a gun and I shot because I thought he was getting a gun to shoot me with." The evidence that McMullen would give if present is set out in our original opinion save as contained in the last paragraph of his affidavit, which is as follows:

"Truman Henson did not raise his long or double barrel gun until Box had stopped the car and *reached over behind the seat of the car.*" (Italics ours.)

For the State the witnesses who testified to the immediate facts of the shooting were Box, his wife and daughter, and for appellant, himself and his wife, all interested witnesses. This being true, it is appellant's contention that the evidence of Mc-Mullen should not be held cumulative, and that to so hold would be in conflict with Taulbee v. State, 133 Tex. Cr. R. 530, 113 S. W. (2d) 182; Abramson v. State, 120 Tex. Cr. R. 11, 47 S. W. (2d) 303; Whatley v. State, 117 Tex. Cr. R. 447, 36 S. W. (2d) 751. We think appellant's position is supported by the authorities cited.

It is unquestionably the law that a motion for new trial based upon newly discovered evidence is addressed to the sound discretion of the trial court, and that it is not error to overrule such a motion unless in the opinion of the trial court such new evidence would likely produce a different result. In determining this the newly discovered evidence must be viewed in the light of the whole case. It is in evidence here that a prior shooting between these parties had taken place in which appellant then used a shotgun and Box a pistol, according to appellant's testimony; he claiming that Box fired first with the pistol. Appellant was indicted for assault with intent to murder growing out of this former shooting. Upon the trial the jury accepted appellant's version of the matter and acquitted him. The newly discovered witness, McMullen, was acquainted with all the parties, knew of trouble between Box and appellant's father as well as that between appellant and Box. Coming in sight of the parties under the circumstances as claimed by the witness, with knowledge of the former difficulties, the witness would be apt to take note of movements of both more than would a witness who was not so informed. The distance of the witness from the scene of the difficulty could, of course, be considered by the trial judge in passing upon the probable effect of the evidence of

the new witness, but where the proposed evidence is in consonance with that of appellant and his wife, and being the only disinterested witness upon the vital issue as to when Box made certain movements with his hands, and the significance of these movements to appellant, we think the trial court fell into error in concluding, if he did, that the proposed new evidence would not likely change the result upon another trial. The witness made affidavit that he saw the things asserted by him, and under the circumstances here present the jury should have an opportunity to appraise his evidence.

Appellant's motion for rehearing is granted; the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause remanded.

GRAVES, Judge (dissenting on rehearing).

The only matter at controversy in this case is the exact instant of time in which Mr. Henson leveled his shotgun at Alex Box. There is no controversy over the fact that Henson was standing by the roadside at or near a clump of trees and saw Box coming down the road; that he had his loaded shotgun in his hand at the time he was observed by Box; that the mere fact of Henson thus standing by the road was a menacing fact and impressed Box as such. The testimony is clear and uncontradicted that prior to or just at the time the shot was fired, Box threw his hand back of his wife and girl and pushed them down before the shot was fired, but such transactions took place at practically a split second apart because of the fact that the little girl got some shattered glass in her eye and the wife had a hand cut with glass. These facts are not denied.

The newly discovered witness' statement finally concludes, "That Truman Henson did not raise his long or double-barreled gun until Box had stopped the car and reached over behind the seat".

To reverse this case because of the newly discovered witness would be to allow him to testify that appellant merely stood in this menacing attitude with a shotgun in his hand until Box decided that Henson would shoot, and after making such decision, Box pushed his wife and daughter out of danger and sat up and let appellant fill his head with shot.

I am impressed with the idea that the trial court did not believe that the newly discovered witness could possibly have been paying such close attention to this transaction as to have

told with exactitude the split-second difference between the action of the reaching of Box and the shooting by Henson, although Henson says that Box's hand was still in the back of the car when he shot him, and furthermore, that the newly discovered witness could have been minutely observing both parties so carefully that he could have told what they were both doing at the same time, especially from his viewpoint about 100 yards away in the woods from the scene of action. If he be thus allowed to testify, there would be doubt that the testimony would probably be true.

It is said in 31 Tex. Jur. p. 284, sec. 84, as follows:

"The probable truth of the newly discovered evidence is an indispensable requisite to the granting of a new trial upon the ground here under consideration. Stated in another way, the rule is that a new trial on the ground of newly discovered evidence will be denied if it appears from facts proved at the trial, or from controverting affidavits, or otherwise, that the new evidence probably is not true. And so the motion is properly denied when it appears that the new witness is not worthy of belief. The probable truth of the new evidence is primarily a question for the trial court, and its conclusion will be disturbed only when an abuse of discretion is shown."

This doctrine is supported by an array of cases from this court.

Again, the trial court surely did not believe that the newly discovered evidence would have changed the result of the trial. Undoubtedly Mr. Box made no effort at this time to shoot appellant, although not seriously wounded, but retreated from the scene. Appellant's hawk-shooting excuse for being armed with a double-barrel shotgun at the roadside was doubtless not believed by the jury, they not being as considerate to him as when he was crow shooting at a former difficulty when Mr. Box was shot, for which shooting the jury acquitted appellant. Doubtless the trial court did not think the testimony, if present, would have affected the result, and I agree with that conclusion.

There was practically the same testimony shown by all parties, and the physical facts show that appellant's wife and daughter were below the windshield at least far enough to escape the bullets that shattered it at the time the shots were fired.

We again quote from 31 Tex. Jur. p. 285, sec. 85, as follows:

"The newly discovered evidence should not be such as merely sustains a technical defense, but should go to the merits. The Criminal Reports abound in cases that assert and apply the rule that a new trial will not be granted unless the new evidence is of such a character as will probably change the result if produced upon another trial."

After citing numerous cases, the text continues:

" 'The probable effect of claimed newly discovered evidence is primarily for the trial judge who passes upon the motion for new trial, and the appellate court will not interefere with his action in denying the motion, if under the facts no abuse of his judicial discretion is shown.' "

In the instant case, according to the appellant, he had shot at Mr. Box three times, and doubtless the jury, and any other jury, would think that it was time that this shooting was stopped. Under the physical facts here presented, we do not think that the testimony of this timid witness would produce a different result than the verdict in this case.

I also think that under the facts as herein detailed by appellant, he was not entitled to a charge on self-defense, not limited by one on provoking the difficulty. I think his position by the roadside with a shotgun in his hand could not fail to provoke a man whom he had previously shot from attacking, or attempting to attack, or ward off the attack of appellant. I know of nothing that could be more provocative than to suddenly come upon one's enemy who had previously shot the injured person, and find such a one standing by the roadside with a shotgun in his hand; and if such an attitude of appellant was reasonably calculated to provoke Mr. Box to reach for a pistol or gun, which it seemed he did not have, then appellant had forfeited his right of perfect self-defense.

I believe the careful trial court did not abuse his discretion in refusing a new trial for this belated testimony.

My brethren having ordered the granting of the appellant's motion for a rehearing, I here respectfully enter my dissent thereto.

ON STATE'S MOTION FOR REHEARING.

DAVIDSON, Judge

The State, in keeping with the views expressed in the dissenting opinion, earnestly insists that the majority opinion gives

no effect to the discretion lodged in the trial court to determine not only the probable truth of the new testimony but also the probability that a different result would be reached upon another trial, with the new testimony presented. Stated in another way: The State's contention is that if the trial court abused his discretion in this case, he had none in the first instance.

The term "discretion" or "judicial discretion", as here used, is incapable of exact definition. Generally speaking, that term comprises two classifications—one, where the court has the absolute and unlimited power to determine a question before him as he pleases; the other, where the determination is to be made in keeping with that which is just and equitable under all the facts and circumstances and subject to review by another court.

The instant case falls within the latter classification. It is from that viewpoint we are to determine if the trial court erred or abused the discretion lodged in him when he overruled the motion for new trial.

Art. 753 and Sec. 6 of the Code of Criminal Procedure provides as follows:

"New trials, in cases of felony, shall be granted for the following causes, and for no other.

"Sec. 6. Where new testimony material to the defendant has been discovered since the trial. A motion for a new trial on this ground shall be governed by the rules which regulate civil suits."

For said statute to apply, it is necessary that it be shown that the new testimony was in fact newly discovered; that it was material, and the failure to discover same before trial was not due to a lack of diligence on the part of the accused. As to these, appellant brings himself clearly within the statute, for it is definitely established that the new testimony was in fact newly discovered, that it was material, not cumulative, with no lack of diligence upon appellant's part. Such being true, it appears that appellant presents facts which, under the provisions of the statute, constitute a prima facie case requiring the granting of a new trial. Such prima facie case, however, is not conclusive but is overturned when the trial court, in the exercise of the discretion the law places in him, determines that the new testimony is not probably true or a different result would not probably be reached if the new testimony is produced upon another trial. That the new testimony is not probably true may be shown from the facts proved upon the trial, controverting affidavits, the credibility of the witness or otherwise.

No attack was made, upon the hearing of the motion for new trial, as to the credibility of the witness; nor was evidence presented, by affidavit or otherwise independent of that produced upon the trial of the case, showing that the new evidence was not true. The State, therefore, depended upon the facts and circumstances proven upon the trial of the case to establish the showing that the new testimony was not probably true.

As pointed out in the majority opinion, the witnesses for the State and the appellant were all interested. Appellant and his witnesses insisted that the injured party did make the demonstration of reaching behind his wife and daughter before the shot was fired. The State's witnesses were as insistent that appellant fired before the demonstration was made.

The new testimony corroborated appellant's theory and tended to disprove that of the State. It was upon the claimed demonstration by the injured party that appellant predicated his plea of self-defense upon apparent danger.

The determination of the probable truth of the new testimony by the trial court is not alone determinative of the question of whether a new trial should be granted. The probable effect upon another trial, as producing a different result, also must be given consideration.

Note is taken of the fact that to support the overruling of a motion for new trial upon newly discovered evidence, it must be found that a different result would not be reached upon another trial. The burden is upon the State to so show. This court early so held, in Lindley v. State, 11 Tex. App. 283-287, where the rule is announced, that if doubt exists as to whether the new evidence would be effective such doubt should be resolved in favor of the defendant. 31 Tex. Jur., Sec. 85, p. 285 (at p. 287).

The conclusion expressed in the majority opinion is deemed in keeping with the rule stated, and also in keeping with the conclusions expressed in Russell v. State, 92 Tex. Cr. R. 114, 242 S. W. 217. In that case, the conviction was for murder. A new trial was sought, upon the newly discovered evidence. The defense was self-defense from apparent danger, by the demonstration of the deceased to hip pocket, which caused the accused to believe that he was about to draw a pistol. The State's case depended upon the testimony of one witness, who testified to facts contradicting the self-defense theory. The accused attacked

this witness by testimony that his reputation for truth and veracity was bad. The newly discovered testimony supported the defensive theory as to the demonstration and hip pocket movement on the part of the deceased. The conclusion was reached that a new trial should have been awarded because if the new testimony was true it "strongly corroborates that of appellant, and renders more probable his theory of the case, and may produce a different result upon another trial."

While the State's witnesses, here, were' not attacked as to reputation for truth and veracity, they were interested witnesses, as distinguished from disinterested.

No fixed rule or rules can be announced whereby it may be said that a trial court has or has not abused his discretion in overruling a motion for a new trial upon newly discovered testimony. Each case must be determined in the light of the peculiar facts and circumstances there presented. One controlling factor must be recognized here, as in all criminal cases, which is: the doctrine of reasonable doubt. If doubt exists between issues, that which is favorable to the accused should be adopted. Such is a basic principle of our jurisprudence. It is in that light that we arrive at the conclusion here reached.

Being unable to reach the conclusion that a jury upon another trial would not probably reach a different result, it becomes our duty to hold that the trial court abused his discretion in overruling the motion for new trial.

Believing the majority opinion correctly disposes of the case, the State's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.