Emmitt WILLIAMS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 47723.

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

Rehearing Denied Feb. 13, 1974.

Jack M. Yates, Abilene (on appeal only), for appellant.

Ed Paynter, Dist. Atty., Glenn Heatherly, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

The conviction is for the offense of burglary. The punishment, enhanced by two proven previous felony convictions as provided by Article 63, Vernon's Ann.P.C., is life imprisonment.

Burglarized was an unoccupied business building formerly used by a monument business and referred to as the monument place. The record evidence is that at approximately 10:30 p. m. on September 7, 1972, about a week after an inspection confirmed that the building was then locked and all windows were intact, police officers cruising in the area discovered several men inside the building. As the officers approached, they saw appellant and another man pushing a large, heavy safe [1] out the wide open front door. Upon being discovered, the other man ran from the scene, but the appellant got in a car [2] which was backed up to the front of the building with the deck lid open. As appellant attempted to start the car, the police cruiser was driven in front and blocked the path of the parked car. Appellant was arrested.

Investigation revealed that the glass in an overhead door at the back of the building had been broken, the wall rail on one side of the door had been "busted loose," and the door was pushed in at the bottom through which entry was made. The front door, through which appellant and another were observed pushing the safe, had been opened from the inside. Neither appellant nor any other person had been given permission to enter the building or to remove any property therefrom.

Appellant did not testify. He presented one witness, Arthur Lee Ervin, whose testimony was that he and appellant were together on the night of, and until about thirty minutes before appellant was apprehended for, the burglary. He denied that he went to the building with appellant.

First, appellant submits that the evidence is not sufficient to prove that he committed a "breaking," a necessary element of the offense of burglary. The position taken is that since there was no direct evidence that appellant actually committed the breaking, the evidence did not exclude the other hypothesis that the building had been broken into by some other person during the week between the time the building was last inspected and the moment appellant was discovered on the premises. The possibility of this hypothesis being true is strengthened, appellant argues, since it is obvious the force applied to break the door would have required some sort of substantial tool and there is no evidence of any such tool being found on the premises or in appellant's car. He relies upon two cases whose facts show an absolute lack of probative evidence that the accused broke into, or was found in or near, the burglarized premises.

Appellant's position is not well taken, his argument is not cogent, and his authorities are not applicable. Here, the evidence established a forced entry into the building. Appellant was identified as one of the persons seen inside of and coming from the building, pushing a safe out of the building through the front door. The evidence of appellant's presence at, and his activities on, the burglarized premises was proof of facts in such close juxtaposition to the burglary so as to constitute direct evidence on the issue whether appellant committed a "breaking." Under evidence of somewhat similar circumstances appearing in Benton v. State, 164 Tex.Cr.R. 618, 302 S.W.2d 138 (1957), the evidence was held sufficient to sustain the conviction there attacked, as is the conviction here, on

1. The evidence revealed, perhaps ironically, that there was nothing in the safe.

2. The inference from the evidence is that the automobile was owned by appellant's mother.

the ground that the evidence was insufficient to show that the appellant broke and entered the premises. See, also, Hall v. State, 161 Tex.Cr.R. 460, 278 S.W.2d 297 (1955).

■ Additionally, appellant made no explanation of, and gave no reason for, his possession of the safe removed from the burglarized building without permission. It is consistently held that the unexplained possession by the accused of property recently stolen from the burglarized premises is sufficient to support a conviction of burglary. Jones v. State, 458 S.W.2d 89 (Tex.Cr.App.1970), and cases cited.

· The court charged on the law of principals. Under the charge, the evidence is sufficient to sustain appellant's conviction for burglary. The first ground is overruled.

Next, appellant asserts error in the denial of his motion for new trial grounded on newly discovered evidence. The thrust of the assertion is that the newly discovered evidence substantiates appellant's claim that the burglary had occurred before he arrived on the scene. In support of his new trial motion, appellant offered the testimony of:

Dermin Edmonds—an inmate of the Taylor County Jail, who said he was appealing a conviction for burglary of another building, for which he had received the enhanced punishment of life imprisonment.[3] Approximately an hour previous to appellant's arrest, according to Edmonds' testimony, he had a conversation with M. L. Horne, who was in the company of George Curry, Willie Darden, Clarence Thomas, Robert Hood, Jr., and two others unknown to Edmonds. The court sustained the objection to hearsay with the remark that the court may very well not consider the conversation, but permitted Edmonds to state for

the record his conversation with Horne. The substance of the conversation was that Horne asked Edmonds to take him in Edmonds' car to get a safe on the outside of the monument place that had already been broken into. Edmonds refused. Shortly thereafter, Edmonds, Horne, Hood, Darden and Curry started to the monument place in Curry's car. Enroute, Curry had a wreck and they all walked back to the starting point.

Edmonds again refused Horne's request to use Edmonds' car to get the safe. Horne asked if Edmonds knew anyone who would take him and Edmonds, seeing appellant's car parked across the street, suggested Horne ask appellant. Edmonds saw Horne start across the street.

Edmonds then left and drove in his car to and around the monument place. Edmonds did not see a safe, but saw the front door was "open about a foot." He did not mention the condition of the back door. Edmonds drove on. From his estimate of the time, it was then about twenty minutes before appellant was arrested on the premises. Edmonds said he did not take part in the burglary.

Early the next morning of September 8, 1972, Edmonds was arrested for burglary of another building. Upon an objection to hearsay, Edmonds was permitted to state for the record that as he was being jailed, Officer Turnbow told him that appellant had been arrested and where, to which Edmonds replied, "Emmitt didn't break inside that place." Upon being asked, "Who did?", Edmonds responded that he ". . . didn't want to tell him because it wasn't any of my business, but the same guys that tried to get Emmitt to take them up there to pick up the safe, they asked me to do the same thing, and I wouldn't go because I thought it was a set up."

---

3. Edmonds invoked his privilege against self-incrimination and refused to answer each time he was asked if he was the same person who was convicted of the felony offenses of assault with intent to commit robbery, of burglary on four separate occasions, and of theft, prior to his last conviction. The state offered no proof of these convictions.

Edmonds and appellant occupied the same cell for some time before and after appellant's trial. Edmonds' testimony was that he did not mention the incident until after appellant's trial when appellant said his attorney told him he could probably get a new trial if he could "come up" with some new evidence.

George Edward Curry, a resident of the Taylor County jail,[4] testified that approximately two and one-half hours before appellant's arrest, he had a conversation with M. L. Horne. The conversation, admitted for the record after an objection to hearsay was sustained, was that Horne requested him to use his car to pick up a safe on the outside of a building that already had been broken into. About thirty minutes later, Curry, Horne, Edmonds, Hood and Pepper Darden left in Curry's car. On the way, Curry had a wreck and the occupants started walking back to the place of departure. Curry described the color of the car he was driving as blue.

After Curry invoked his privilege against self-incrimination and refused to answer questions concerning the ownership of the car and his permissive use, the state introduced Curry's written statement given five and one-half months previously. The document contains Curry's statements that he took a white over green car from a place of business about 9:30 p. m. on September 7, 1972; that he drove around for an hour; that the gas pedal hung and the car hit the side of the road; that the motor died, but he finally got it started and drove it back to the place from which he had taken it.

Curry acknowledged that the car mentioned in his testimony and in his statement was the same car. He denied any participation in the burglary.

Robert Ford, appellant's court appointed trial attorney also testified. His testimony was directed to the diligence he used in investigating the facts of the case from the information furnished by appellant. He stated that the information given by Edmonds and Curry in their testimony had not come to his attention. Although he said it was possible that appellant knew about Edmonds' and Curry's information before trial, he thought it highly improbable in view of what he knew about the case. He had advised appellant not to testify at his trial.

Emmitt Williams, Jr.—the appellant.[5] Appellant proposed to testify to his conversation with Horne. Upon objection that it would be hearsay, appellant was allowed to state for the record that Horne asked appellant to take him "somewhere." Following Horne's directions, appellant drove Horne, Darden, Hood and Ervin to the monument place. Appellant stopped where directed. Someone asked for and took the car keys, saying he wanted to put the safe in the car. Appellant refused the request to put the safe in his car, and he was trying to start the car when he was apprehended. He denied previous knowledge of, or having anything to do with, the burglary.

Appellant further denied talking about his case with, or having knowledge of the testimony of, either Edmonds or Curry until after his trial. He did not deny that he occupied the same cell with Edmonds for some two months before his trial.

The state offered only the testimony of a deputy sheriff. He stated he knew Edmonds, Curry and appellant and the repu-

4. Curry invoked his right against self-incrimination and refused to answer each time when asked if he was the same person previously convicted on eight different occasions. The state offered no proof of the convictions.

5. Appellant refused to answer, invoking his privilege against self-incrimination, each time he was asked if he was the same person who

was seven times previously convicted for burglary, once for felony theft, and once for misdemeanor theft. Although the trial record at the punishment stage of appellant's trial showed proof of ten previous convictions for burglary and one for felony theft, the state offered no proof of the convictions inquired about at this hearing.

tation of each. His testimony was that the reputation of each was bad. He had seen appellant and Edmonds together in one cell.

■ From the authorities he cites, appellant notes that for a new trial to be granted on newly discovered evidence as authorized by Article 40.03, § 6, Vernon's Ann.C.C.P., it is necessary that certain requirements be met. It must be shown that the testimony was in fact newly discovered, that it was material, that the failure to sooner discover the new evidence was not due to a lack of diligence, and that the new evidence is probably true and a different result probably would be reached if the new testimony is produced at another trial.

■ A motion for new trial based on newly discovered evidence is addressed to the sound discretion of the trial judge, and his decision thereon, absent a showing of clear abuse of discretion, should not be disturbed on appeal. Hill v. State, 480 S.W. 2d 670 (Tex.Cr.App.1972). The order denying appellant's motion for new trial does not assign a specific reason therefor; however, if appellant has failed to establish any of the essential requirements, a new trial should be refused. Ashworth v. State, 151 Tex.Cr.R. 83, 205 S.W.2d 788 (1947). Pursuant to these principles, it cannot be said that the denial of a new trial was error.

■ Of course, appellant's testimony at the hearing on his motion for new trial is not newly discovered evidence, for the facts he related were known to him before his trial. Accepting that there was no lack of diligence on the part of the trial attorney to discover the testimony of Edmonds and Curry, this leaves for consideration their admissible testimony. Discarding the hearsay conversations had with Horne, as it is evident the trial judge did from his remarks, the only probative admissible evidence is that, prior to appellant's arrest, Edmonds drove to and around the monument place and saw no safe on the outside of the building, but noticed the front door

was "open about a foot." Under the most charitable consideration, Edmonds' testimony, when examined with the other evidence adduced at the trial, is not sufficient to create the required reasonable doubt that appellant was not a participant in the burglary. In the state of the circumstances proved, Edmonds' testimony does not exclude appellant's participation in either the forced entry through the back door or a forced entry through the partly open front door. When appellant was seen inside of and coming from the building at night, he was pushing a large safe through the wide open front door, and in that situation, any force used in pushing wider a partly open door and entering constitutes a burglary. Woody v. State, 461 S.W.2d 411 (Tex.Cr. App.1970).

■ Furthermore, the alleged newly discovered evidence merely embellished the facts otherwise known to appellant. If appellant's testimony is correct, the probative evidence that he was a victim of circumstances without culpability was known to him before trial. His testimony was that Horne directed him to the burglarized premises. Therefore, appellant knew before his trial that Horne, Darden, Hood and Ervin, all of whom appellant testified he transported to the monument place, could substantiate the facts he now contends are true. Yet, of all these persons, appellant presented only Ervin at the trial, and Ervin denied being on the burglarized premises. A new trial may not be secured by the stratagem of failing to call a witness whose identity and knowledge of appellant's case was then known. Fuqua v. State, 457 S.W.2d 571 (Tex.Cr.App.1970); Hill v. State, 403 S.W.2d 797 (Tex.Cr. App.1966).

Moreover, as stated in Henson v. State, 150 Tex.Cr.R. 344, 200 S.W.2d 1007, 1014 (1946), a case relied upon by appellant, even a prima facie case requiring a new trial ". . . is not conclusive but is overturned when the trial court, in the exercise of the discretion the law places in him, determines that the new testimony is

not probably true or a different result would not probably be reached if the new testimony is produced upon another trial. That the new testimony is not probably true may be shown from the facts proved upon the trial, . . . the credibility of the witness, or otherwise."

■ The probable truth of the new evidence is primarily a determination for the trial judge. Here, the judge saw the witnesses, observed their demeanor, and was required to determine the issue of their credibility. He was confronted with contradictions in the presentation of the newly discovered evidence. Illustratively, either appellant's testimony that he transported Ervin to the premises where appellant was arrested, or the trial testimony of Ervin that he did not accompany appellant, was false. Edmonds testified that he refused to take Horne to the monument place because he thought it was a setup; yet, a few minutes later he started to those premises with the others in Curry's car and would have gone there except for the wreck; and thereafter he drove to the premises in his own car. Either Edmonds' testimony that the safe was not outside the building, or the statement he said Horne made that the building already was broken into and the safe was outside, was false. Curry's testimony at the hearing and his written statement given previously could not both be true. In addition, the judge necessarily had to assess the testimony of Edmonds and appellant that they spent some two months in the same cell without discussing appellant's case in light of Edmonds' testimony that, earlier on the first day they were incarcerated together, he willingly volunteered to Officer Turnbow the information that appellant did not commit the burglary.

■ Under all the circumstances, we cannot say that the judge, in finding a lack of one or more of the necessary requirements for a new trial, abused his discretion in denying the new trial motion. This record would support the judge's denial or-der for one or more of the reasons that the evidence was not in fact newly discovered, was not material, was not probably true, and a different result probably would not be reached on the production of the testimony at another trial. The second ground is overruled.

■ The third ground, presented without authoritative support, is that appellant was denied his constitutional rights by the failure and refusal to set a bond for him. The ground is without merit, for the denial of bail alone is not a ground for reversal of a conviction. Jackson v. State, 454 S. W.2d 733 (Tex.Cr.App.1970).

■ Ground number four is not briefed as required by Art. 40.09, § 9, Vernon's Ann.C.C.P. Consequently, it presents nothing for review. Casey v. State, 475 S.W.2d 920 (Tex.Cr.App.1972).

■ At the punishment stage of the trial following the jury's guilty finding on the primary offense of burglary, appellant pleaded "true" to the two previous felony convictions alleged in the indictment for enhancement of punishment. After some admonishment by the court, the appellant persisted in his plea of "true." Proof of appellant's record was received in evidence. The court instructed the jury to, and the jury did, return a verdict of "true," making mandatory the punishment at life imprisonment.

In his fifth and last ground raised in a supplemental brief, appellant contends he was deprived of his liberty without due process by the failure of the court to properly advise him that one of the consequences of his "true" plea would be a mandatory sentence of life imprisonment. The admonition appellant says he did not receive is one included in the warning dictated by Art. 26.13, V.A.C.C.P. It follows, appellant argues on the basis of cited authoritative holdings, that the punishment stage of his trial was invalid and nugatory.

As both basic to and supportable of his argument, appellant cites cases embracing

the proposition that a plea is not voluntary unless the accused is both admonished and apprehends the range of allowable punishment. The cases cited are inapposite to the present situation, for their language speaks only to the plea of guilty entered to the primary offense charged, and not to the plea to the allegations contained in the indictment for enhancement of punishment.

The same contention appellant urges here was advanced in Crowder v. State, 424 S.W.2d 637 (Tex.Cr.App.1968), by the appellant who received the mandatory sentence of life imprisonment. There, the contention was rejected with the holding that the warning required by Art. 26.13, V.A.C.C.P., does not apply to the punishment portion of the trial. In the present record there appears no circumstance that would justify a departure from the holding in *Crowder*. The last ground is overruled.

The judgment is affirmed.

Opinion approved by the Court.