**Vicente OCHOA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00393–CR.**

Court of Appeals of Texas,
San Antonio.

June 1, 1983.

Edward J. Kidwell, San Antonio, for appellant.

Alger Kendall, Dist. Atty., Karnes City, for appellee.

Before CANTU, TIJERINA and DIAL, JJ.

## OPINION

CANTU, Justice.

On July 17, 1981, a Frio County jury found Vicente Ochoa guilty of intentionally and knowingly causing the death of Nieves Segovia, Jr., by shooting him with a gun. See, art. 19.02(a)(1), Tex.Penal Code Ann. (Vernon 1974). The trial court set his punishment at 30 years' confinement in the State penitentiary. Ochoa's only ground of error is that the trial court abused its discretion in not granting him a new trial based on newly available evidence.

Viewing the evidence in the light most favorable to the verdict, the record reflects that at 12:30 a.m., on March 8, 1981, Ochoa and one Gilbert Flores drove up to the parking lot of the Case tractor outlet in Dilley, Texas, where a group of six or seven young men, including the deceased, had congregated to drink beer. Appellant and Flores pulled into the parking lot and remained inside the automobile staring at the young men. Very soon thereafter appellant, who was seated in the passenger seat of the car, got out of the car, approached the young men and asked if "anyone had anything against him." The deceased responded to appellant's inquiry and an argument ensued. Flores then got out of the car, carrying a shotgun, and walked over to one of the men and began arguing with him and hitting him with the shotgun. Flores then went back to the car with the shotgun but Ochoa remained in front of the group and told them that he would fight any of them in Flores' stead. When nobody accepted the challenge Ochoa started walking towards the car some 50 feet away.

The deceased stepped out of the crowd, told Ochoa he would fight him with "bare hands," and followed towards the car. When Ochoa reached the car Flores handed Ochoa a shotgun and Ochoa shot the deceased with it at very close range.

A pistol was found about one foot from the deceased's body, but none of the State's witnesses saw the deceased in possession of the gun prior to the shotgun blast. One defense witness testified that he saw the deceased brandishing the pistol as he approached Ochoa, who was standing beside the passenger side of the car, and Flores who was seated in the driver's seat. Ochoa did not testify. Flores, however, was called by Ochoa's counsel, but invoked his privilege against self-incrimination and refused

to give any testimony as he was under indictment for the same murder.

On September 15, 1981, some thirty days after the imposition of punishment, Ochoa filed an amended motion for new trial, in which he alleged that since Flores had been subsequently acquitted of the same murder Flores would now be available to testify and that such testimony constituted newly available evidence entitling him to a new trial under the rule of *Whitmore v. State,* (on appellant's motion for rehearing), 570 S.W.2d 889 (Tex.Cr.App.1978).

The affidavit of Flores attached to appellant's amended motion for new trial recites Flores' willingness to testify in behalf of appellant because as he acknowledges, he can no longer be prosecuted for the murder of Segovia. The substance of his proposed testimony is that appellant "did not shoot and kill Nieves Segovia and is innocent of the charges against him."

The amended motion for new trial does not disclose much more in the way of newly available testimony. According to the motion appellant was between Flores and Segovia, both of whom possessed firearms, in an effort to prevent bloodshed when the shotgun was fired. The motion does not indicate who fired the shotgun or how it discharged.

At the hearing on the motion the entire testimony proffered in support of a new trial was as follows:

Q: [Defense Attorney]: All right. Do you recall the events of the night when Nieves Segovia got shot, the deceased?

A: [Gilbert Flores] Yes, sir. It was an accident.

Q: How did he get shot?

A: Well, he came to the car, you know, and that shotgun was laying on the front of the car. And he tried to grab it and I was grabbing it back and that's when it went off.

The trial court overruled the motion for new trial.

In reviewing appellant's ground of error we are somewhat hampered by a limited record.

The record reflects that Flores was indicted in the 218th District Court on April 24, 1981. Ochoas' indictment bears a file stamp indicating that it was returned on the same date. Both indictments are numbered consecutively. No documents sustaining Flores' claim of acquittal appear in the record. However, the clerk of the District Court of Frio County testified at the hearing on the motion that Flores had been acquitted of the offense of murder and that Flores was appellant's co-defendant. The court reporter for the 218th District Court testified that Flores did not testify at his own trial. Both appellant and the State assert in their briefs that Flores' acquittal of murder, nevertheless, resulted in a conviction of aggravated assault. The State argues in its brief that:

> . . . it was well known to the appellant, as it was to the trial judge, who presided at the trial of Flores, that Flores did not testify at his own trial but argued successfully that he was not guilty of the murder of Segovia as a party to the offense, since Ochoa fired the fatal shot,

There is, however, no evidence before this court in support of this claim.

We will, however, accept the unchallenged statement of facts proffered in appellant's brief as correct, pursuant to art. 44.33 (Rule 211, Courts of Appeal) and Rule 419, Tex.R.Civ.P.Ann. (Vernon 1979). *See Jackson v. State,* 628 S.W.2d 119 (Tex.App. —Beaumont 1982, pet ref'd).

The discovery after trial of new evidence material to the defendant constitutes a ground for new trial. Tex.Code Crim.Proc.Ann. art. 40.03(6). The overruling by the trial court of a motion for new trial based on newly discovered evidence will not constitute an abuse of discretion unless the record shows (1) the evidence was unknown to the movant before trial; (2) that the defendant's failure to discover it was not due to want of diligence on his part; (3) that its materiality was such as would probably bring about a different re-

sult on another trial; and (4) that it was competent, not merely cumulative, corroborative, collateral or impeaching. *Hernandez v. State,* 507 S.W.2d 209 (Tex.Cr.App. 1979). To be material the new evidence must be shown to be probably true and of such weight as to probably produce a different result at another trial. *Whitmore v. State,* 570 S.W.2d 889 (Tex.Cr.App.1979, on appellant's motion for rehearing); *Williams v. State,* 504 S.W.2d 477 (Tex.Cr.App.1974). Whether the new evidence is probably true is a determination for the trial judge. *Eddlemon v. State,* 591 S.W.2d 847 (Tex.Cr. App.1980).

The courts have been slow to shake off the common law rule that co-defendants are incompetent to testify on the behalf of each other. *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The English and Colonial law excluded all such testimony expressing the rightfully held fear that "... each [of the defendants] would try to swear the other out of the charge." *Benson v. United States,* 146 U.S. 325, 335, 13 S.Ct. 60, 63, 36 L.Ed. 991 (1892).

It is not surprising, therefore, that when a new trial is requested on the grounds of newly discovered evidence, and the newly discovered evidence is the testimony of a co-defendant the appellate courts have tended to uphold the findings of the factfinder.

The United States Supreme Court takes the position that a denial of a motion for new trial "... is not subject to facile reversal," *United States v. Johnson,* 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946), and the United States Court of Appeals for the Fifth Circuit has held that a denial of a new trial "... will be reversed only where it is shown that the ruling was so clearly erroneous as to constitute an abuse of discretion." *United States v. Antone,* 603 F.2d 566, 568 (5th Cir.1978).

Texas courts have taken a similar position, holding that the standard of review for the denial of a new trial alleging newly discovered evidence is abuse of discretion on the part of the trial court. *Van Byrd v. State,* 605 S.W.2d 265 (Tex.Cr.App.)

*supra.* The record must show "... a clear abuse of discretion," before a new trial will be granted by an appellate court. *Eddlemon v. State, supra.* The courts of this state have also required a strict, almost hypertechnical, compliance with all four prerequisites entitling an appellant to retrial because of newly discovered evidence. *See, Wilson v. State,* 633 S.W.2d 351 (Tex.App.— Beaumont 1982, pet ref'd). We will, therefore, review the record to determine whether appellant complied with the four requirements and whether the court's denial of a new trial constitutes a clear abuse of discretion.

Whether the substance of the witness' testimony in this case was unknown to Ochoa is doubtful. It seems that if the shooting occurred the way Flores testified it did, Ochoa and Flores were the only two people who could testify to it. This would be a different case if Ochoa had taken the stand and stated he did not know or could not remember what happened.

Although the testimony of Flores was not technically newly discovered, it was newly available and according to the continuous holdings of the Court of Criminal Appeals, both are considered one and the same. *Whitmore v. State, supra.*

We have no difficulty conceding that the issue of diligence was never a factor since clearly appellant sought the unavailable testimony and attempted to avail himself of its benefits only to be rebuffed by Flores' invocation of his privilege against incrimination.

The decision of Flores not to testify was solely within his control. Ochoa could not force Flores to testify but nevertheless called him to the stand. Ochoa exercised all the diligence he could under the circumstances and therefore satisfied the diligence requirement.

Also, here we have admissible eyewitness testimony bearing upon an accused's basic right to present his version of the facts, facts to which no other witness testified. The evidence, therefore, was competent and

was not cumulative nor corroborative or collateral.

Neither appellant nor Flores testified in their respective trials. We are, therefore, in no position to state that the evidence of one actually coincided with or was supportive of the other. In *Whitmore,* the Court of Criminal Appeals observed that the defendant had testified in his own behalf. Additionally it recognized that the co-defendant's actual testimony from his own trial had proven convincing to a jury. Thus it was reasoned that the defendant should have had the benefit of testimony supportive of his version of the facts and of proven credibility.

■ In the instant case the proffered testimony at the hearing refuted the idea that appellant even handled the shotgun used in the killing of deceased. During the trial of the case all the witnesses including appellant's witness placed the shotgun in the hands of appellant. Indeed, appellant's defense raised and vigorously urged to the jury, admitted of the act but claimed excuse and justification. An instruction on self-defense was requested and given. We think that the minimal testimony offered at the hearing did nothing more than serve to impeach all the witnesses including appellant's own witness on the question of possession of the weapon during and immediately after the shooting. We are not persuaded that the newly injected defense of accident by another party as presented to the trial court constitutes that type of evidence as would probably bring about a different result on another trial. Nor does the minimal testimony possess that degree of verity found to exist in *Whitmore, supra.* As noted earlier, Flores did not testify at his own trial thus it cannot be said that his testimony was of a proven persuasive variety. This is especially true since whatever defense he relied upon failed to absolve him of all liability.

■ The trial court has broad discretion to determine the issues, the credibility of the witnesses and whether a different result would occur in the event of a retrial with Flores testifying before another jury. As stated in *Eddlemon, supra:*

> In *Williams v. State,* 504 S.W.2d 477 (Tex.Cr.App.1974), this Court again upheld the denial of a new trial on lack of probable truth where there were discrepancies in the new evidence and circumstances which might cast a shadow on its veracity. 'The probable truth of the new evidence is primarily a determination for the trial judge. Here, the judge saw the witnesses, observed their demeanor, and was required to determine the issue of their credibility.' *Id.* at 483. Where the truth of the new evidence is properly contested, as it is here, this Court should not second-guess the factfinder in the best position to decide the issue. *Compare Henson v. State,* 150 Tex.Cr.R. 344, 200 S.W.2d 1007 (1946) with *Williams v. State, supra.*

With the discrepancies created by the proffered testimony we cannot say that the trial court abused its discretion in ascertaining the probable truth of the new evidence. *Cf. Eddlemon v. State, supra; Van Byrd v. State, supra.*

Further, we are aware that the credibility of Flores is suspect by the very nature of his relation to Ochoa. We note "... it is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his co-defendant." *Ledet v. U.S.,* 297 F.2d 737 (5th Cir.1962). The trial court heard the testimony of all the eyewitnesses to the shooting and had the opportunity to observe their demeanor. The trial court also heard Flores' testimony and observed his behavior on the stand. In view of the conflicting evidence and the fact that Flores' credibility is inherently suspect, we find no clear abuse of discretion by the trial court. *Cf. Todd v. State,* 601 S.W.2d 718 (Tex.Crim.App.1980). The judgment of the trial court is affirmed.