**Hubert Acey JOCK, Appellant,**

v.

**The STATE of Texas,**

**Appellee.**

**No. 6–85–035–CR.**

Court of Appeals of Texas,
Texarkana.

March 18, 1986.

John Stauffer, Dallas, for appellant.

John D. Nation, Asst. Dist. Atty., Dallas, for appellee.

## GRANT, Justice.

Hubert Acey Jock appeals his jury conviction and the trial court's determination and assessment of punishment of fifteen years confinement for the offense of aggravated robbery. On appeal Jock contends that the trial court erroneously overruled his motion for new trial based upon newly discovered evidence and that he was denied effective assistance of counsel.

On October 29, 1984, Samuel Gene Boatman, an employee of Domino's Pizza in Dallas, delivered two pizzas to 2320 Hillburn Street, Apartment D, in Dallas. He was greeted at the door by a blond white female who turned away into the apartment apparently to obtain money to pay for the pizzas. A white male, identified by Boatman as Jock, stepped into the middle of the apartment room and pointed a pistol at Boatman. The man then told Boatman to come into the apartment and lie face down on the floor. Boatman heard, but did not see, another person. He thought this person to be a black male. After the taking of Boatman's personal wallet, the Domino's Pizza wallet, and the two pizzas, Boatman was locked in a closet.

Boatman later identified Jock from a photographic lineup provided by the Dallas police department. At trial, Boatman made a positive identification of Jock in the courtroom as the person who pointed a handgun at him during the course of this aggravated robbery. Jock did not testify, but called two alibi witnesses, Theodore Lyons and Larry Hawkins. Both men had worked with Jock on the day in question and testified that he was working with them earlier during the day and was also with them later in the afternoon and evening. Additionally, one of these witnesses stated that a Terry Strange had lived in the apartment with Jock prior to and during the months of September and October, 1984. Also, one of the witnesses testified that Terry Strange's physical features were similar to those of Jock. However, there was also evidence that the difference in the build or body structure between Strange and Jock made their identities easily distinguishable.

In his motion for new trial, Jock attached the affidavit of Sherry Thorpe in which she stated that two days prior to Halloween, 1984, which would have been October 29, 1984, at approximately 4:00 p.m., she went to Apartment D at 2320 Hillburn Drive in Dallas to see if Strange, her former brother-in-law, still lived there. As she walked into the apartment, she observed Strange and a black male, known only as Glenn, hitting or shoving a white male into a hall closet. According to the affidavit, she immediately left, but a few days later in the apartment of an acquaintance, she overheard Terry Strange bragging about having robbed a "pizza man." Mrs. Thorpe further swore that it was not until February 28, 1985, that she learned from Jock's sister that on February 6, 1985, Jock had been convicted for this robbery. She then decided to come forward.

At the hearing on the motion for new trial, Thorpe's testimony was the same as that contained in her affidavit, and she also explained that she was looking for Terry Strange in order to locate her estranged husband, Strange's half-brother, to discuss Halloween events for their child. She also

testified that the male victim that she saw had blond hair. She indicated that she did not initially call the police because she did not want to get involved. Other people also were present and overheard Strange's statements; some of these people she knew, but others were known to her only by their first names or not at all.

Sharon Thompson, Jock's sister, testified at the hearing that she did not know about the crime or the trial until after the conviction. She received a telephone call from Jock seeking a photograph of Strange, because Jock believed that Strange committed the robbery. She then called Thorpe in an effort to locate a photograph of Strange. This occurred in February, 1985, and this was when the defense discovered the new evidence in the form of the testimony of Thorpe.

The trial court overruled the motion for new trial. Such rulings will not be disturbed on appeal unless the record shows: (1) the newly discovered evidence was unknown or unavailable to the movant at the time of the trial; (2) the failure to discover or obtain the evidence was not due to lack of diligence; (3) the evidence was admissible and was not merely cumulative, corroborative, collateral, or impeaching; and (4) that its materiality was such as would probably bring about a different result on another trial. *Ayers v. State*, 606 S.W.2d 936 (Tex.Crim.App.1980); *Simon v. State*, 630 S.W.2d 681 (Tex.App.-Houston [1st Dist.] 1981, no pet.).

The record indicates that the new evidence was unknown to the defense at the time of trial and the failure to discover such evidence was not due to a lack of diligence. The evidence was admissible, both as to the eyewitness account and to the statements made by Strange. The evidence was not merely cumulative, because it offered an eyewitness account by a third party who was not involved as a victim or defendant.

The remaining requirement presents a more difficult question. The State contends that this new evidence shows only that Strange was also at the scene, but was not seen or heard by the victim Boatman. While this is a possible interpretation, a jury could also conclude that Boatman had mistakenly identified Jock as being one of the participants when in fact it was Strange. The State further contends that the evidence was not credible, and therefore would not bring about a different result in a new trial. The record did indicate a discrepancy between the testimony of Boatman and Thorpe as to the color of the shirt the assailant was wearing, but this was a detail that either witness might have failed to remember accurately. Thorpe, being well acquainted with her brother-in-law Strange, was in a position readily to identify him; whereas the victim did not have that familiarity with either Strange or Jock. Also, Thorpe was a friend of Jock and testified that at one time he had failed to keep a date with her. However, she was also acquainted with Strange, and related to him by affinity, and it was he that she had gone to visit.

The State urges that the determination of the materiality of the new evidence is within the discretion of the trial judge because he is in a better position to determine the credibility of the new evidence. *Simon v. State, supra*. However, an analysis of the Texas cases demonstrates that in order to sustain the trial judge's finding, there must exist a basis which is established by the record.

The most recent case on this subject is *Boyett v. State*, 692 S.W.2d 512 (Tex.Crim. App.1985). In this case, the defendant urged a motion for new trial on the basis of the discovery of an alleged statement of the investigating officer that he had found a gun on the person of the deceased. The Court of Appeals determined that the evidence was hearsay from a witness shown to be somewhat hard of hearing. The Court further found that this evidence was inconsistent with the defendant's defense which was based upon accident and did not involve an alleged gun being possessed by the victim. The appellate court concluded that the evidence was of such weight that

it would probably not produce a different result in a new trial.

In the case of *Etter v. State*, 679 S.W.2d 511 (Tex.Crim.App.1984), the court confirmed a lack of diligence by the defendant in making the evidence available at the trial, and further found the testimony at the hearing on the motion for new trial to be vague, uncertain, incomplete and merely corroborative and cumulative.

In the case of *Ochoa v. State*, 653 S.W.2d 368 (Tex.App.-San Antonio 1983, no pet.), the court found that the newly discovered evidence was properly contested at the motion for new trial, and thus the trial judge as the factfinder was in the best position to decide the issue. The court also found that the credibility of the new witness was suspect by the nature of his relationship to the defendant and that it was not unusual for an accomplice to assume the entire fault and thus exculpate his codefendant. Again, this was a case involving conflicting evidence at the motion for new trial.

In the case of *Bolden v. State*, 634 S.W.2d 710 (Tex.Crim.App.1982), the court found that the testimony by the new witness was rebutted by two witnesses at the hearing on motion for new trial, and the trial court was free to believe either the new witnesses or the rebuttal witnesses.

In the case of *Wilson v. State*, 633 S.W.2d 351 (Tex.App.-Corpus Christi 1982, pet. ref'd), the court was not presented with the purported newly discovered evidence, and thus was not able to determine whether the testimony was admissible and if it were merely cumulative, corroborative, collateral, or impeaching.

In the case of *Van Byrd v. State*, 605 S.W.2d 265 (Tex.Crim.App.1980), the trial court was faced with conflicting testimony, and thus the trial court used its discretion in determining probable truth of the testimony.

In the case of *Cody v. State*, 605 S.W.2d 271 (Tex.Crim.App.1980), the newly discovered evidence was in the form of a diary which was examined in camera by the court. The court found that the state-

ments in the diary were either inadmissible or cumulative of the testimony at the trial.

In the case of *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Crim.App.1979), the newly available evidence was in the form of testimony that conflicted with sworn affidavits signed by the witness. Thus, the testimony being properly contested, the trial court was in the best position to decide the issue.

In the case of *Collins v. State*, 548 S.W.2d 368 (Tex.Crim.App.1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811 (1977), the court found that the defendant was aware of the existence of the witness, but did not seek any delay in the trial to obtain the presence of the witness. The court also found that the testimony of the witness would have been cumulative of other alibi testimony.

In the case of *Williams v. State*, 504 S.W.2d 477 (Tex.Crim.App.1974), such contradictions existed in the presentation of the newly discovered evidence to support the trial judge's denial of the motion for new trial.

In the case of *Hill v. State*, 480 S.W.2d 670 (Tex.Crim.App.1972), the affidavits which averred newly discovered evidence were not introduced into evidence at the hearing on the motion for new trial. Therefore, the appellate court found there was nothing for review.

In the case of *Petroff v. State*, 439 S.W.2d 844 (Tex.Crim.App.1969), no motion for continuance was filed in order to locate a known witness and to obtain his testimony.

■ All of the foregoing cases enunciate factors which established a basis for the trial judge's rejection of the newly discovered evidence as justifying a new trial. However, without the existence of such factors as contradictions, internal inconsistencies, prior inconsistent statements, or rebuttal evidence at the hearing on the motion for new trial, the trial court is not free to disregard newly discovered evidence which establishes the required elements.

The following cases are precedents granting motions for new trial on the basis

of newly discovered evidence: *Simon v. State, supra; Washington v. State,* 642 S.W.2d 194 (Tex.App.-Houston [14th Dist.] 1982, pet. ref'd); *Carlisle v. State,* 549 S.W.2d 698 (Tex.Crim.App.1977); *Henson v. State,* 150 Tex.Crim. 344, 200 S.W.2d 1007 (1947).

The record in the present case does not show any contradictions within the newly discovered evidence and no impeachment or rebuttal evidence was offered. The evidence was clear, positive, and direct, and not cumulative of other evidence presented in the case.

The new evidence is calculated to produce two elements of doubt in the minds of the jurors: an eyewitness account at the scene and the statements of admission made by the person not charged with the crime. These two factors are certainly material on the fact issue of the appellant's identity.

As the court said in *Henson v. State, supra*:

> Each case must be determined in the light of the peculiar facts and circumstances there presented. One controlling factor must be recognized here, as in all criminal cases, which is: the doctrine of reasonable doubt. If doubt exists between issues, that which is favorable to the accused should be adopted. Such is a basic principle of our jurisprudence.

We find that the newly discovered evidence is sufficient to establish the prima facie elements, including materiality, which would probably bring about a different result on another trial. Under the circumstances, a jury should have an opportunity to appraise this newly discovered evidence. The judgment is reversed and the cause is remanded for a new trial.