**Elton Wayne HANCOCK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 43236.**

Court of Criminal Appeals of Texas.

Dec. 9, 1970.

Rehearing Denied Feb. 3, 1971.

Bill Cannon, Houston (Court appointed on appeal), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Tom Dunn, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

———◆———

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The punishment was assessed by the jury at 99 years.

The record reflects that Elton Wayne Hancock, the appellant, killed his aunt, Nettie Olds, by stabbing her with a knife. On November 1, 1967, the body of the deceased was found in her home in Baytown. Her purse was open, but it was not known if any money was missing.

The appellant's confession, dated November 4, 1967, was introduced into evidence. It recited, in substance, that appellant was 18 years of age, finished the 10th grade in school, resided in LaMarque and was employed as a roofer in Texas City. After work on the night in question, he went to see his girl friend in Baytown, but she was not at home. He then started toward the home of his aunt, Nettie Olds. He had car trouble and parked his car some three blocks from her house and walked. She let him in the house where they talked for a while and she invited him to eat. After he finished eating, he took the white handled steak knife and stabbed her while she was sitting on the floor sewing a dress. He then ran to his car, drove to Seabrook, had a flat, fixed it and drove home. The next morning he got up, check-

ed and saw that his clothes had no blood on them and went to work.

The confession also recited that he did not know if it was for sexual satisfaction or why he killed his aunt. He stated in the confession that he had previously cut up women's shoes with his knife and had gone to Gatesville for breaking into houses to steal shoes. He also stated that he had had psychiatric care at Galveston, and the doctors said he was cured.

The defense was insanity.

In the first ground of error, appellant contends that the confession did not meet the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

Before the confession was introduced, the court conducted a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, type hearing outside the presence of the jury.

Robert P. Merchant, a detective of the Baytown Police Department, testified at the hearing on the voluntariness of the confession, and the following is taken from his testimony. He investigated the murder and took fingerprints of members of the family of the deceased including those of appellant, her nephew, who had visited there to see if there were fingerprints in the home of the deceased of persons who were not relatives. These were referred to as "elimination prints." Several other people, including the daughter of the deceased, were fingerprinted and interviewed in a search of clues for others who had been in the house.

Some three days after the murder, Detective Merchant asked appellant to accompany him to the police station in LaMarque. They arrived at the station at 8:59 P.M. He talked with appellant until approximately 9:35 P.M. when the "elimination prints" were taken. This took from five to ten minutes. The interview continued. In discussing the visit to the home of his aunt, appellant made a different state-

ment about where he parked his car and the number of times he went to the house. At this point Merchant advised him not to make any more statements, because he was a suspect in the murder case. Judge John D. Anderson of the Corporation Court of the City of LaMarque was called. When he arrived at approximately 10:45 P.M., he advised appellant of his rights under Article 15.17, Vernon's Ann. C.C.P.

The warning recites that appellant had a right to retain counsel, to remain silent, to have an attorney present during an interview, to terminate an interview at any time, to request appointment of an attorney at any time, to have an examining trial and that any statements he made might and probably would be introduced against him.

The warning given by Judge Anderson was signed by appellant. It contained the statement that he did not want to consult with a lawyer before making the statement and that he voluntarily waived his right to a lawyer and to remain silent.

Substantially the same warning was given by Detective Merchant a short time later. It included a statement waiving counsel and the right to remain silent.

Appellant started making the statement or confession some two minutes after the warning. Appellant signed each page of the three page confession which shows on its face to have been completed at 12:35 A.M., November 5, 1967.

Merchant further testified that he called appellant's parents after appellant started giving the statement and that the father came and talked to his son some four or five minutes. It is not shown at what time the father arrived. Merchant testified that he read the warning aloud and that appellant read it, and he thought that appellant fully understood it.

Judge Anderson testified that he gave the appellant the warning which included the right to remain silent and his right to

counsel and it appeared that appellant was intelligent and knew that he was waiving these rights.

Neither the appellant nor his father testified at the hearing, and no other witness was called by appellant to testify on the admissibility of the confession either at the hearing or during the trial.

The trial judge found beyond a reasonable doubt that the confession was knowingly, intelligently, freely and voluntarily made; that Detective Merchant gave the statutory warning, and that prior to that warning Judge John D. Anderson gave the warning as set out previously and that the confession was given without threat, compulsion, persuasion, duress, coercion or any improper influence.

The trial court submitted an instruction to the jury on the voluntariness of the confession. There was sufficient evidence from a totality of the circumstances for the trial court to find and conclude that the appellant waived his right to counsel and to remain silent. See Easley v. State, Tex.Cr.App., 448 S.W.2d 490, and Mc-Candless v. State, Tex.Cr.App., 425 S.W.2d 636.

From the above we cannot conclude as a matter of law that the confession was inadmissible under Miranda v. Arizona, supra.

■ In the second ground of error, complaint is made that the punishment of 99 years amounts to cruel and unusual punishment and violated the Constitution of the United States.

Article 1256, Vernon's Ann.P.C., provides that the punishment for murder shall be death or by confinement for life or any term of years not less than two.

The punishment assessed is within the limits prescribed by the Legislature and does not constitute cruel and unusual punishment. Webb v. State, 460 S.W.2d 903; Burton v. State, Tex.Cr.App., 442 S.W.2d

354; and Jacks v. State, 167 Tex.Cr.R. 1, 317 S.W.2d 731.

▋ In the third ground of error, appellant contends that reversible error was committed during the cross-examination of a doctor by the prosecutor during the trial at the hearing to determine appellant's competency to stand trial (present insanity) and his sanity at the time of the commission of the offense.[1]

"MR. DUNN: (Assistant District Attorney) Well, doctor, any time the head of that hospital certifies the man to be sane he would be sent back to the court—the judge would have no alternative than to bench warrant him back in. You know that, don't you?

"MR. WILSON: (Appellant's counsel) I object to that. It is not a proper subject for inquiry.

"THE COURT: Sustained.

"MR. DUNN: Are you familiar with the rule that compels a judge to have the man who was found insane in court brought back to the courtroom for another hearing?

"MR. WILSON: I object to the question. It is not a question of proper inquiry at this time before the jury.

"THE COURT: Sustained.

"MR. WILSON: I ask that the jury be instructed to disregard the question.

"THE COURT: The jury is so instructed.

"MR. DUNN: Well, Doctor, in view of what you said about this long term psycho-therapy do you think—can you guarantee this man if he is found

insane will not be walking the street of this county within two weeks?

"MR. WILSON: I object to it again.

"THE COURT: Sustained.

"MR. WILSON: And I ask the jury to be instructed not to regard it.

"THE COURT: The jury is so instructed."

The court immediately sustained the objections to each unanswered question and instructed the jury not to consider the questions. In the absence of a motion for mistrial appellant is in no position to complain. Hoover v. State, Tex.Cr.App., 449 S.W.2d 60; Birdsong v. State, Tex. Cr.App., 387 S.W.2d 404. No reversible error is shown.

▋ In the fourth ground of error it is contended that the jury was limited to qualified voters who either owned property or were the heads of households and that this automatically eliminated unmarried eligible voters who did not own property, and that certain public officials, mothers of minor children, school teachers and others were excluded from the jury panel. The record contains no motion to quash the jury panel.

There is no showing that any group of people were eliminated from the panel. Absent such a showing nothing is presented for review. See Bradley v. State, Tex. Cr.App., 450 S.W.2d 847.

▋ Appellant also contends that it was error to permit the State to challenge for cause the prospective jurors who would not assess the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, is cited, but it it not in point. The Supreme Court in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct.

---

1. The hearing was held during the trial in accordance with the decisions in Townsend v. State, Tex.Cr.App., 427 S.W.2d 55, and Morales v. State, Tex.Cr.App., 427 S.W.2d 51. The trial was commenced on June 3, 1969, before Article 46.02, Section 1, V.A.C.C.P., was amended, effective June 10, 1969, which provides for a hearing of present sanity (competency to stand trial) in advance of the trial on the merits.

1788, 20 L.Ed.2d 797, held that if the death penalty was not assessed it was not reversible error to excuse prospective jurors who had general conscientious scruples against the death penalty.

 In the fifth ground of error, it is contended that reversible error was committed when the court instructed the jury using the M'Naghten rule in submitting the issue of insanity. He cites United States v. Freeman, 357 F.2d 606, 622, 624 (2nd Cir. 1966), which criticizes the rule.

The charge given defines insanity in substantially the same terms as that shown in 1 Branch's Ann.P.C.2d, Section 59.5, pp. 50, 51, and is sufficient. The fifth ground of error is overruled.

The judgment is affirmed.