William THOMPSON, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51365

Court of Criminal Appeals of Texas.

June 9, 1976.

Larry L. Miller, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., and Les Eubanks, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of murder with malice. The jury assessed punishment at life.

Among other things, the sufficiency of the evidence to corroborate an alleged accomplice witness is challenged. On December 14, 1973, Wilma McCage, who resided just across the street from Tietze Park in Dallas, reported to police that she heard a loud noise that sounded like a shot between 12:15 a. m. and 12:20 a. m. At approximately 1:00 a. m., Officer Kenneth Maltby of the Dallas Police Department went to the park and found a body lying near the sidewalk with a bullet wound in the chest. The wallet found on the body contained a driver's license and cards bearing the name "James Anderson." Officer Maltby found the victim's car parked at the Quarterback Lounge approximately one mile from the park. Sonny Thompson and Betty Pruitt managed the Quarterback Lounge and they kept a .410 shotgun behind the bar.

Harold Taylor testified that at approximately 11:00 p. m. he and his wife had gone to the Quarterback Lounge on December 13, 1973. Present in the lounge when they arrived were Thompson, known as "Sonny," and his girlfriend, Linda Hines; the barmaid, Sharon Keatts; Bobby Vandiver and Betty Cannon, both of whom were deceased at the time of the trial; Helen Vargas; James Anderson (the deceased) and an unnamed couple with him. Taylor stated that as he walked in Thompson said, "Are you ready to get down?" He didn't really know what Thompson meant "because everything seemed peaceful and quiet . . .", but he responded, "Yea . . . who with?" Appellant pointed to the deceased and the unnamed couple. At that time appellant said, "I am fixing to have some trouble with them m_____ f_____." After Ander-

son went to the rest room, Thompson followed and Taylor could hear blows being struck.

". . . Then Sonny come out and shortly after that Jimmy Anderson come out and Sonny called him over there and said, 'Come on, buddy, let's forget all of this, let's go get high,' so Jimmy mumbled, he said, 'That's right, Sonny, you know I like you,' and Sonny put his arm around him, then they went, I guess you call it a storeroom back there in the back and—"

He then saw Thompson strike Anderson on the jaw and knock him to the floor. Thompson then asked Taylor to help him get Anderson out the back door. After they carried Anderson out, Thompson left and later drove up to the rear of the lounge in a Malibu which belonged to Linda Hines. When Taylor and Thompson put Anderson in the back seat Taylor noticed the shotgun in the front seat. Taylor rode in the back seat with Anderson to Tietze Park. After they arrived at the park Thompson parked and then got Anderson out of the car. Taylor related that Anderson was "kind of staggering" and was not able to walk. When they got across the street, Thompson knocked Anderson down. Taylor further related that Thompson had whipped Anderson on more than one occasion and felt certain that he was going to do it again. Thompson asked Taylor, who had remained in the car, to bring the shotgun, which he did. Taylor then returned to the car. He testified that he thought Thompson was going to scare Anderson or hit him with the barrel of the gun. Instead Thompson ". . took the shotgun and just placed it over him." He then realized that Thompson intended to shoot Anderson. He tried to reason with Thompson not to shoot and told him that several people at the lounge had seen them leave with Anderson. Thompson replied, "Oh, f___ him," and shot Anderson in the chest. The two of them returned to the lounge in the car and Taylor then left with his wife.

Jerry Bob Combs, a roommate of Linda Hines and Helen Vargas, was called as a rebuttal witness by the State and he testified that some time in the early hours of December 14, 1973, he had received a call from Thompson who asked him to clean up the red and white Malibu and he did by using a cleanser and wiping the seats with a towel. Later the same day, around 2:00 or 3:00 p. m., Thompson called him again and asked him to dispose of the shotgun in the upstairs closet because it was the gun with which he had killed Anderson. Combs wrapped the gun, a single action .410 gauge shotgun, in cloth and placed it in a trash dumpster behind the apartments.

■ First, appellant contends that the trial court erred in refusing to instruct the jury that Harold Taylor was an accomplice witness as a matter of law. Taylor's testimony does not make him an accomplice witness as a matter of law. A fact question as to his being an accomplice witness was submitted to the jury. This instruction was sufficient under the facts of this case. *Van Buskirk v. State*, 492 S.W.2d 279 (Tex.Cr. App.1973).

■ Appellant contends that the evidence is insufficient to corroborate the testimony of Taylor. Under the first contention just discussed, Taylor was not an accomplice witness. It was not necessary to corroborate his testimony. We hold that his testimony, along with other evidence presented, is sufficient to support the conviction. *Brown v. State*, 505 S.W.2d 850 (Tex.Cr.App.1974).

■ Appellant next complains that the prosecutor committed improper jury argument when he made the following remarks at the guilt stage of the trial:

". . . Now, ask yourselves this, how do we have a case on Harold Taylor? Sonny Thompson sure isn't going to get up there and tell it, is he? No."

He contends that the statement is a direct comment on his failure to testify. The argument of counsel on both sides has been reviewed and we find that the statement complained of, if in fact it was such a comment as alleged, was not so prejudicial

that it could not be cured by an instruction. Appellant's objection was sustained and the jury was instructed to disregard the statement. No reversible error is shown.

■ Complaint is made of certain remarks of the prosecutor at the guilt stage of the trial. He contends that the prosecutor interjected his personal opinion when he argued:

" . . . Now, I am convinced of this case and I ask you in all good conscience, I am not up here trying to obtain another conviction, I have got my job and whether I lose this case or win does not affect my job whatsoever, but I doubt that I have ever been as convinced of a case as I am in this case today. . . . "

The record shows that the statement was made following his summation of the evidence. After the objection was overruled, the prosecutor stated:

"Defense counsel has stood up here and as it's his duty to do, earnestly implore and told you from the bottom of his heart about this man's innocence, et cetera. Well, I am imploring y'all to find the right verdict in this case, to use your good judgment and your good conscience and I will ask you, no matter how long it takes, to hang out until you find this man guilty. Guilty."

Prior to the argument of the prosecutor, counsel for the defense had argued that "Mr. Thompson did not do what he is accused of." Two other times he argued, "He did not do that." There is no statement or indication that the prosecutor had other evidence that he could not get before the jury nor is there any indication to the jury that he had other matters in mind when he made the statement. The argument was a proper reply to argument of counsel for appellant.

Further, practically the same argument by the prosecutor was before the jury before the statements objected to were made. This argument was " . . . we are convinced that this man right here is the man that committed the murder just like those witnesses told you and just as the evidence shows."

Even if it could be said that the complained of argument was error, it would not be reversible because the same was already before the jury without objection.

■ Appellant next contends that the court erred in admitting into evidence the multi-count indictment of a prior conviction in District Court of Travis County which had various other offenses alleged therein for which he was not convicted. The State made an election to proceed only on the allegation of the primary offense. The State proved that appellant was the person convicted in the Travis County case. The prior convictions alleged in that case were later proved by stipulated documentary evidence. Appellant admitted that he had been convicted of these offenses when he testified. Any error was made harmless by such proof.

■ He also contends that reversible error was committed when a prior conviction was admitted into evidence and said conviction had been later found to be constitutionally invalid. The complained of conviction was that which was introduced at the punishment stage as State's Exhibit # 19 wherein appellant had been convicted of larceny in Cause No. 4846, *United States v. William Sonny Thompson* on April 13, 1959, before the Honorable Ben Rice, United States District Judge, U.S.D.C., Western District of Texas, Waco Division. He points out to this Court that that conviction was held to be constitutionally invalid in *Thompson v. Beto,* 474 F.2d 1345 (5th Cir. 1973).

■ Appellant testified at the punishment stage of the trial. When the exhibit in question was offered, there was no objection that it was constitutionally invalid and there is no showing in the record that at the time of such prior conviction the appellant was indigent, without counsel, and did not waive the same. Six prior convictions were offered in evidence and appellant's counsel objected to four of them on the grounds that he was without counsel at these trials. No objection was made to the case involv-

ing the federal conviction complained of and there was no objection to the federal conviction which was pled for enhancement. A constitutional ground may be waived by a failure to object. *Mutscher v. State,* 514 S.W.2d 905 (Tex.Cr.App.1974); *United States v. Lazarus,* 425 F.2d 638 (9th Cir. 1970).

Appellant first brought the matter to the court's attention in his amended motion for new trial. At the hearing on his amended motion he introduced a copy of an unpublished opinion of the United States District Court holding his 1959 federal conviction invalid. The copy was not certified and appellant's amended motion for new trial was overruled. Waiting until the amended motion for new trial to present the question was apparently trial strategy by the appellant who from his record shows that he was well acquainted with criminal procedure. This was no doubt trial strategy where he sought a favorable verdict, and if he did not obtain it, he would get a new trial. At most, any error would be harmless because there were five other valid prior convictions introduced at the penalty stage of the trial. See *Williams v. State,* 493 S.W.2d 863 (Tex. Cr.App.1973).

Lastly, he contends that it was error for the trial court to allow Jerry Combs to testify because his name was not on the list of witnesses furnished by the State to him. This contention is without merit. Combs was called as a rebuttal witness by the State. No objection was made to his testifying. Nothing is presented for review.

No reversible error having been shown, the judgment is affirmed.