**Wilbur Charles COLLINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52961.**

Court of Criminal Appeals of Texas.

Nov. 3, 1976.

Certiorari Denied April 4, 1977.
See 97 S.Ct. 1611.

Douglas R. Bergen and Charles L. Cantrell, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty. and Felipe Reyna, Raymond C. Matkin and Lynn W. Malone, Asst. Dist. Attys., Waco, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an appeal from a conviction for capital murder, wherein the punishment was assessed at death. See V.T.C.A. Penal Code, Sec. 19.03(a)(2) and Article 37.071, V.A.C.C.P. The indictment charged that on or about October 10, 1974 appellant while in the course of committing and attempting to commit the offense of robbery intentionally and knowingly caused the death of Billy Abraham by shooting him with a gun.[1]

---

1. Article 19.03 Capital Murder

"(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

 \* \* \* \* \* \*

"(2) the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery . .;

"(b) An offense under this section is a capital felony."

Appellant initially contends that the trial court improperly limited voir dire examination of a juror by not permitting him to ask the following question of venire member Mrs. Edgar Lee Fortune:

"Could you, regardless of what the evidence showed in any case—and I'm not talking about this case—could you ever believe that regardless of what the evidence showed, that a police officer was telling a willful falsehood from that witness stand?"

The State's objection that this was an improper question, and that the venireperson had answered on direct examination that she would judge the police officer's testimony by the same criterion as any other witness was sustained. The transcription of the voir dire of Mrs. Fortune shows that she had so testified in answer to the State's questions.

The record reflects that appellant used his first peremptory challenge on Mrs. Fortune.

Appellant relies on our decision in *Hernandez v. State*, Tex.Cr.App., 508 S.W.2d 853, in support of his contention that the court reversibly erred in refusing him to ask the above question to venireperson Fortune. In *Hernandez*, the defendant was denied the right to ask the prospective jurors the following question:

"Is there any member of the panel who, regardless of what the evidence showed in any case, could not believe that a police officer was telling a willful falsehood from the witness stand?"

This Court, in holding the trial court's refusal to propound this question to the jury panel to be reversible error, stated:

"As in *De La Rosa v. State*, supra, [Tex. Cr.App., 414 S.W.2d 668] this appellant filed a written motion requesting the court's permission to ask the question at issue on voir dire. The motion was denied. Appellant then sought additional peremptory challenges, which were denied. He then sought to perfect a bill of exception, while the prospective jurors,

were present, showing what their answers would have been. The court refused to allow him to do so. He later informed the court that he had been required to take two objectionable jurors. Finally, the court refused to honor his request that a transcript of the voir dire examination be included with the record on appeal. As in *De La Rosa v. State*, supra, this appellant has, in effect, been denied an effective opportunity to show harm. See also *Mathis v. State*, 167 Tex. Cr.R. 627, 322 S.W.2d 629 (1959)."

In the instant case, in which the panel was questioned separately, appellant complains only of the court's sustaining the objection during the interrogation of venireperson Fortune. The entire voir dire of the members of the venire is included in the record, and it reveals that this or a substantially similar question was asked and answered by practically every remaining juror without any objection by the State. In *Emanus v. State*, Tex.Cr.App., 526 S.W.2d 806, on page 808, we stated:

"Our research has revealed no cases resulting in reversal where the limitation of the *voir dire* examination complained of pertained to only one juror. In the cases we have found which were reversed for this reason, the trial court has refused the asking of certain questions or otherwise acted with reference to the jury panel as a whole. . . . The fact, conceded during oral argument, that appellant did not exercise all his peremptory challenges, is relevant in this situation and mitigates the harmfulness of any error."

The record in the instant case further discloses that appellant did not exercise all of his peremptory challenges, and he does not complain on appeal that he was forced to accept any objectionable jurors. After exercising his fifteenth peremptory challenges, he asked for additional challenges "so that we may adequately select a jury in the case." The court granted him two additional peremptory challenges. Thereafter, he used one of these, but accepted, without objection or question, the twelfth juror

without having used his last challenge. See *Adami v. State*, Tex.Cr.App., 524 S.W.2d 693, 700, and authorities cited.

As to any harm resulting to appellant from any error in refusing to permit the above question to be propounded to the juror Fortune, we quote from *Burkett v. State*, Tex.Cr.App., 516 S.W.2d 147, as follows:

"[2] What, then, is the test for injury or not when the court denies the asking of a question sought to permit an intelligent exercise of the accused's peremptory challenges? We know from *Livingston v. State*, 152 Tex.Cr.R. 302, 214 S.W.2d 119, that injury must be shown, and that merely showing the question sought and that it was denied is not sufficient. Although *Grizzell v. State*, 164 Tex.Cr.R. 362, 298 S.W.2d 816, did not involve the denial of a question sought expressly for the exercise of a peremptory challenge, we find the test stated there to be appropriate for this situation, in light of the latitude which should be accorded counsel in preparing himself to intelligently exercise his client's peremptory challenges. In *Grizzell v. State*, supra, on motion for rehearing, at 821, Judge Morrison, speaking for a unanimous court, gave guidance on the issue before us in the following manner.

"After setting out the questions which the defendant had sought to ask, and then setting out the trial court's qualification of the bills of exception, which qualifications showed other questions which were asked, it was stated:

" 'As we view the questions [sought], they were no more than a restatement of what the court's qualification shows was actually asked.

" 'The trial court must be allowed some discretion in limiting the examination of prospective jurors or some trials would never terminate. We remain convinced that the appellant has failed to show that he has been deprived of any valuable right by the limitation herein assigned as error.' *Grizzell v. State*, supra, at 822."

Reversible error is not presented.

In his fifth ground of error, appellant contends that the evidence is insufficient to sustain a finding that appellant murdered deceased while in the act of committing or attempting to commit robbery.

Considering the evidence in the light most favorable to the verdict, the record reflects the following:

On the morning of October 10, 1974, Billy Abraham was the only employee on duty at the 7–11 convenience store situated on the corner of 12th and La Salle Streets in Waco. He at the time had the care, control and custody of the store and its contents. At 10:00 o'clock that morning he sold a bottle of soda water to police officer Nix. At some time between 10:10 and 10:40, his dead body was found in a back room of the store with a number of bullet wounds in the head and neck, and powder burns on the back of the neck. Seven .25 caliber shell casings and four flattened slugs were found on the cement floor under or near the body. Customers entering the store who discovered the body noticed that the cash register drawer was open. The sum of one hundred fifty dollars was missing from the cash register. The evidence exonerated all customers (six) who had entered the store between the time Officer Nix had been waited on by Abraham at 10:00 o'clock and the time of the arrival of police at 10:45 after receiving police radio information concerning the murder and robbery. A few minutes before 10:00 o'clock, appellant was seen about four or five blocks from the store walking toward it. Shortly before deceased's body was found, appellant was seen by the same witness walking in a direction away from the store.

After the initial investigation by police officers during which they received some information[2] of a man seen in the vicinity of the store, a warrant was obtained for the arrest of appellant, and he was arrested that same afternoon. In a search of his home, a number of .25 caliber shell casings were found, and ballistic tests performed by

---

2. Appellant's objection of hearsay was sustained concerning what was told police.

expert Fred Rhymer of the Texas Department of Public Safety established that these shells had been fired by the same pistol which fired the shots that killed Billy Abraham. A pawn shop dealer testified that he had sold appellant a .25 caliber Titan automatic pistol on August 12, 1974.

A written confession signed by appellant on October 14 was admitted in evidence. In it appellant admitted entering the 7–11 store shortly after 10:00 o'clock on the morning of October 10 "to purchase a soda water." He said that "at first I was hesitant because this was the same store that I had robbed about two weeks prior to this date. However, on this date I did not see the same green and black Chevy Malibu sitting in front of the 7–Eleven. I thought there would be a different store manager. I decided to go ahead and go in . . ." In the confession he said that when he noticed "the same manager that I had earlier robbed" the manager pulled a .25 pistol, and in a struggle appellant secured possession of the pistol and shot the manager in the head, and continued to shoot all the remaining shells at him.

At the trial appellant denied that his confession was voluntarily given, or that he had voluntarily waived his constitutional rights of legal counsel and to remain silent. He denied the facts stated in the confession,[3] and testified to an alibi.

We find the evidence to be sufficient to prove that deceased was murdered by appellant in the course of committing or attempting to commit robbery. Appellant in his confession admitted that he shot and killed deceased in deceased's store with a .25 caliber pistol. He admitted on the stand that he bought a .25 caliber pistol in August, 1974, but testified that prior to this offense he had lost it in a dice game. However, the evidence established that .25 caliber shells were found in his home which were fired from the same pistol which fired the shells found near deceased's body, thus

disproving appellant's claim in his confession that deceased was shot with his own pistol. The open cash register drawer, and the missing money, taken into consideration with the other evidence, is sufficient evidence to support a finding that the killing was in the course of committing robbery. The defense of alibi was disproved by the State's evidence. Appellant admitted in his confession and on the witness stand to the commission of a prior robbery at this same 7–11 store two weeks prior to the instant offense.

We find no merit in appellant's contention of insufficient evidence, and overrule his fifth ground of error.

■ In his ninth ground appellant contends the court erred in admitting his written confession in evidence over his objection that he was not properly warned before giving same that the confession "can and will" be used against him. He argues that the warning given him "that any statement made by me *may* be used against me" as shown by the written confession and the testimony of Officer Dale who testified concerning the making of the confession fails to comply with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Art. 38.22, Sec. 1(c)(3), V.A.C.C.P., as amended in 1967 provides, as part of the warning to be given an accused, "(3) . . and that any statement he makes may be used in evidence against him at his trial." Similar language is contained in Art. 15.17, V.A.C.C.P. In *Charles v. State,* 424 S.W.2d 909, cert. denied 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401, this Court held that warnings under Articles 15.17 and 38.22, V.A.C.C.P., were as "fully effective" as the *Miranda* warnings. See *Santiago v. State,* Tex. Cr.App., 444 S.W.2d 758, p. 761; *Sanchez v. State,* Tex.Cr.App., 454 S.W.2d 210, p. 214; *McCandless v. State,* Tex.Cr.App., 425 S.W.2d 636.

---

**3.** He admitted having purchased the .25 caliber pistol, although he testified he had lost it in a dice game previous to this robbery. He admitted the previous robbery at this same 7–11 store as stated in his confession, as well as other recent robberies he had committed in the same neighborhood.

In *Babcock v. State,* Tex.Cr.App., 473 S.W.2d 941, attack was made on a confession that provided "that any statement made by me may be used in evidence against me at my trial." This Court held that error was not committed in the admission of the confession. See also *Hancock v. State,* Tex.Cr.App., 462 S.W.2d 36; *Knoppa v. State,* Tex.Cr.App., 505 S.W.2d 802.

The ninth ground of error is overruled.

■ In his second ground of error, appellant contends that the death penalty is "unconstitutional per se in that it is violative of the Eighth Amendment protecting a defendant against cruel and unusual punishment and the Fourteenth Amendment protecting the rights of due process of the defendant."

In his third ground, appellant argues that Article 37.071, V.A.C.C.P., is unconstitutionally vague in violation of Article 1, Section 13, Texas Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. His complaint is directed to the alleged vagueness of Article 37.071(b)(2), V.A.C.C.P., concerning the question of "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

Appellant's contentions made in these two grounds of error have been answered adversely to him in *Jurek v. State,* Tex.Cr. App., 522 S.W.2d 934; *Smith v. State,* 540 S.W.2d 693 (1976); *White v. State,* Tex.Cr. App., 543 S.W.2d 104 (1976); *Livingston v. State,* Tex.Cr.App., 542 S.W.2d 655 (1976); and in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Gregg v. Georgia,* 428 U.S. 227, 96 S.Ct. 2971, 49 L.Ed.2d 904; *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913.

The second and third grounds of error are overruled.

■ In his fourth ground, appellant contends the court reversibly erred in arraigning him in front of the jury after he had filed a motion to be arraigned outside the jury's presence.

The record reflects that appellant was arraigned in a pretrial proceeding six days prior to the start of the trial, and that he entered a plea of not guilty. On January 27, 1975, when the case was called for trial, appellant filed a motion "to arraign the Defendant out of the presence of the jury before the indictment is read to the jury and before the Defendant's plea is entered before the jury" in which he prayed "that the Court conduct the arraignment of the Defendant out of the presence of the jury before the trial of his cause and that no question concerning the nature of the plea be posed to the Defendant by the court or the prosecuting attorney in the presence of the jury." This motion was denied by the court.

After the jury was impaneled, the court in its presence admonished the appellant of the nature of the offense with which he was charged, and the range of punishment, after which the prosecuting attorney read the indictment to the jury and the following proceedings occurred:

"THE COURT: Did you understand the allegations contained in the indictment, Mr. Collins?

"WILBUR CHARLES COLLINS: Yes, I did.

"THE COURT: Do you have any questions?

"WILBUR CHARLES COLLINS: No.

"THE COURT: How do you plead?

"WILBUR CHARLES COLLINS: Not guilty.

"THE COURT: All right. The court receives your plea of not guilty, and you may be seated. And, gentlemen, you may call your first witness."

Appellant made no objection to these proceedings. Appellant having been arraigned prior to the jury selection, see Arts. 26.01, 26.02, V.A.C.C.P., the order of proceeding in the trial after the jury was impaneled was for the indictment to be read to the jury and the plea of appellant to be stated. Art. 36.01, V.A.C.C.P.; *Castillo v. State,* Tex.Cr. App., 530 S.W.2d 952; *Wood v. State,* Tex. Cr.App., 515 S.W.2d 300; *Gonzales v. State,* Tex.Cr.App., 500 S.W.2d 154. Hence, the

court did not err in refusing to grant appellant's prayer that "no question concerning the nature of the plea be posed to the defendant by the court or the prosecuting attorney in the presence of the jury."

Since the court in the pre-trial arraignment had already fixed appellant's identity and heard his plea, see Art. 26.02, V.A.C. C.P., it was not called upon to give admonishments and instructions on the law to appellant before receiving his plea in the jury's presence, and the court committed error in doing so.[4] See *Lapp v. State,* Tex. Cr.App., 519 S.W.2d 443, 448. However, no objection was made to the remarks of the court, and the court subsequently instructed the jury that the indictment was no evidence of guilt, and considering the totality of the circumstances, reversible error is not presented. *Wood v. State,* supra; *Minafee v. State,* Tex.Cr.App., 482 S.W.2d 273; *Boykin v. State,* Tex.Cr.App., 487 S.W.2d 128; *Lapp v. State,* supra.

■ In his sixth ground of error, appellant complains of the admission in evidence, over objection, of some photographs of deceased's body which, appellant argues, bore no relevancy to establishing any material facts in the case and were introduced solely for the purpose of inflaming the minds of the jury. These photographs were taken shortly after the commission of the offense while the body was still in the room where the shooting occurred. They depict the physical condition of the room and the wounds inflicted. The photographs were properly authenticated as accurately representing what they purported to depict, and were relevant to the issues in the case. Error is not presented. *Greer v. State,* Tex.Cr.App., 523 S.W.2d 687; *Martin v. State,* Tex.Cr.App., 475 S.W.2d 265.

■ Appellant's seventh ground of error complains that the trial court erred in admitting into evidence a consent to search form signed by the wife of appellant, due to the fact that the State failed to show the

consent to search was signed freely and voluntarily and further that Mrs. Collins could not waive appellant's rights to be free from unlawful searches. At the time of the search, appellant had been in police custody for about two weeks.

As stated in *Smith v. State,* Tex.Cr.App., 530 S.W.2d 827, the Supreme Court of the United States recently reaffirmed the constitutional validity of third-party consent searches in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.

". . . These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed authority over or other sufficient relationship to the premises or effects sought to be inspected."

See *Swift v. State,* Tex.Cr.App., 509 S.W.2d 586 and authorities cited.

The incarceration of appellant for two weeks did not vitiate appellant's wife's authority to consent to a search of their home. She still had a right to equal control and equal use of the premises being searched. *Swinney v. State,* Tex.Cr.App., 529 S.W.2d 70; *Swift v. State,* supra.

Answering appellant's contention that the record fails to show that the consent to search form was freely and voluntarily given by his wife, she testified both at a hearing before the court and in evidence before the jury that when she signed the consent to search form handed to her by Officer Denton, she was fully informed and was aware of her right to give or refuse consent, and that she executed it voluntarily after reading the form and knowing its contents. Officer Denton testified to the same effect. The contention of appellant is without merit.

■ Appellant next complains that the trial court committed reversible error in

---

4. This court has consistently condemned the practice of arraigning the defendant in the presence of the jury, and we again caution trial courts of the risk of doing so. See Art. 28.01, V.A.C.C.P.; *Wood v. State,* Tex.Cr.App., 515 S.W.2d 300; *Boykin v. State,* supra; *Stewart v. State,* Tex.Cr.App., 473 S.W.2d 495; *Minafee v. State,* supra.

failing to grant a mistrial at appellant's timely motion when Officer Denton, who participated in the search, volunteered hearsay testimony. The testimony which transpired is as follows:

"Q Okay. Now, I believe you said that you went to a particular place in the Defendant's house after talking to Mr. Hollis, is that correct?

"A That is correct.

"Q Okay. And did you find—what did you find at this particular place?

"A I found by the back door where he had told me I would find the .25 caliber cartridge cases—these four were found, plus the one in the kitchen. He told me that's where I needed to look for them.

"MR. CANTRELL: Your Honor, we object. He is giving a nonresponsive answer, and it is also hearsay, about what he has been told.

"THE COURT: Sustained.

"MR. CANTRELL: And we ask that you instruct the jury to disregard it.

"THE COURT: Disregard the last answer.

"MR. CANTRELL: We also ask for a mistrial, as it is a prejudicial hearsay statement.

"THE COURT: Motion denied."

The articles here involved were found by the officers in their search of the premises after securing consent from the appellant's wife. Harm, if any, as a result of the hearsay answer of witness Denton was cured by the court's prompt action in sustaining the objection and instructing the jury to disregard the answer. *Carey v. State,* Tex.Cr.App., 537 S.W.2d 757; *Twomey v. State,* Tex.Cr.App., 520 S.W.2d 784.

■ In ground of error ten appellant contends that the trial court committed reversible error when it admitted into evidence, over appellant's objection, extraneous offenses for which the appellant was not on trial and which extraneous offenses were not final convictions.

Appellant, testifying in his own behalf, denied his earlier written confession which stated that on the day in question he entered the 7–11 convenience store and, after a brief struggle, robbed and shot the store attendant. He testified that he did not go to the store on October 10, 1974 but instead was downtown "paying a light bill" with his wife. Other defense witnesses gave testimony supporting his alibi. When appellant raised this defensive theory of alibi, he also raised the issue of identity *Mitchell v. State,* Tex.Cr.App., 503 S.W.2d 562.

The State, in response to the alibi defense, produced eyewitnesses who testified that appellant had robbed two small neighborhood grocery stores. These offenses were in addition to two subsequent robberies at the Capri Theatre and the same 7–11 convenience store that appellant admitted committing.

All these robberies were closely related in time (August 11, August 23, September 7, September 24, October 10), and involved small businesses in Waco. Also, appellant entered each store alone and brandished a pistol. In two of these prior robberies, appellant made the victim lie on the floor, face down, just as he did in the instant case.

Under these facts, proof that appellant had committed the four prior offenses was proper to refute his defensive theory, as well as to show identity and a continuous course of conduct. *Vaughn v. State,* Tex. Cr.App., 530 S.W.2d 558; *McDonald v. State,* Tex.Cr.App., 513 S.W.2d 44; *Ransom v. State,* Tex.Cr.App., 503 S.W.2d 810; *Ford v. State,* Tex.Cr.App., 484 S.W.2d 727. Cf. *Cameron v. State,* Tex.Cr.App., 530 S.W.2d 841.

■ Ground of error eleven complains that the trial court erred in overruling appellant's objection because of the allegedly prejudicial jury argument made by the State's attorney by injecting unsworn testimony that bolstered the State's witness. The complained of argument and objection are as follows:

"MR. MATKIN (State): . . . Now, this confession was taken on the 14th of October. Now, it is certainly voluntary. I don't think there can be any doubt in

your mind. If you don't believe it was voluntary, you're calling this man right here a liar, and that police officer right there a liar, and what reasons do they have to lie? There is no reason to lie. Do you think that we're trying to send an innocent man? No. No, I wouldn't be up here, and I couldn't be up here, and I couldn't look any of you in the eye, unless I believe with all of my heart from the evidence, that this man is guilty.

"MR. CANTRELL (Defense): Your Honor, we're going to object to the prejudicial unsworn testimony of the District Attorney concerning his personal beliefs of the Defendant's guilt in this case.

"THE COURT: I assume you're basing it on the evidence?

"MR. MATKIN: Yes, Your Honor, I did qualify that, 'From the evidence.'

"THE COURT: Overruled.

"MR. CANTRELL: Note our exception."

Appellant's eleventh ground of error is without merit.

The statement of the prosecuting attorney shows that it was based on his analysis of the evidence, and was a reasonable deduction therefrom. *Sikes v. State,* Tex.Cr. App., 500 S.W.2d 650; *Smith v. State,* Tex. Cr.App., 513 S.W.2d 823, p. 831; *Hoagland v. State,* Tex.Cr.App., 494 S.W.2d 186. Reversible error is not presented.

■ In ground of error twelve, the appellant contends that the trial court erred in failing to grant appellant's motion for mistrial when the State's attorney, in his final argument, referred to appellant as a "cold-blooded murderer."

In reviewing the evidence in a light most favorable to the verdict, it reveals that appellant, during an armed robbery, led the deceased into a back storage room, made him lie face down on the floor and then shot him six or seven times in the back of the head. Under these circumstances, the statement by the prosecutor was a reasonable deduction from the evidence. *Jackson v. State,* Tex.Cr.App., 536 S.W.2d 371; *Rasberry v. State,* Tex.Cr.App., 535 S.W.2d 871.

Further, prior to the objection, counsel for the State had previously referred to the appellant in the same terms, "He's cool, he's calculated, cold. A cold-blooded murderer and robber. A capital murderer." This statement was not objected to. This Court has held that an objection to improper argument must be made at the time of the argument in order to preserve the error for review. *Thompson v. State,* Tex.Cr.App., 537 S.W.2d 732; *Joines v. State,* Tex.Cr. App., 482 S.W.2d 205.

Ground of error twelve is overruled.

■ In ground of error thirteen, appellant contends that the trial court erred in allowing the State's attorney, *during the punishment stage* of the trial, to ask the State's psychiatrist whether there was a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society in the future, because the doctor's answer that appellant would be a continuing threat invaded the province of the jury.

This Court in *Livingston v. State,* 542 S.W.2d 655 (No. 52,139, 1976) held that this type testimony was pertinent at the punishment stage of the trial to the so-called second special issue under Art. 37.071, V.A. C.C.P.: "(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society . . ." See also *Gholson v. State,* Tex.Cr.App., 542 S.W.2d 395 (1976).

Ground of error thirteen is overruled.

■ In the fourteenth ground of error, appellant complains that the trial court erred in failing to grant appellant's two motions for mistrial when the State's attorney injected unsworn testimony that attempted to bolster the State's witness Doctor James Grigson.

The two complained of statements are as follows:

"MR. MATKIN: . . . Now, they tried to tear down Dr. Grigson. They tried to run him down. All they could. The reason we called Dr. Grigson, Dr.

Grigson is the foremost criminal psychiatrist—

"MR. BERGEN: Oh, Your Honor, we would object to that as being outside the record. There is no evidence—

"THE COURT: Sustain the objection.

"MR. BERGEN: —that Dr. Grigson—in my opinion, he's not.

"THE COURT: I sustain the objection, Mr. Bergen.

"MR. BERGEN: Thank you.

"MR. SELLERS: Your Honor, we object to counsel testifying here about his opinion.

"THE COURT: Yes. I don't want any sidebar remarks. I have done sustained your objection.

"MR. SELLERS: Will you instruct the jury to disregard his remark.

"THE COURT: Any remarks made other than the objections, you will disregard them, ladies and gentlemen.

"MR. BERGEN: I ask for a mistrial, Your Honor, at this time.

\*　　\*　　\*　　\*　　\*　　\*

"MR. MATKIN: Dr. Grigson said that he had testified—said he had examined some 7,000 people charged with crimes, and I believe he said, in the last 18 months, some 200 murders—or I'm not sure about the time, but I know he examined a lot of people. He has been called upon to testify in this courtroom before. He has testified for the State before, and I have heard him testify for the Defendant before.

"MR. CANTRELL: Your Honor, we're going to object to counsel testifying outside the record.

"THE COURT: Yes. I sustain the objection.

"MR. CANTRELL: Would you instruct counsel to abide by your ruling.

"THE COURT: Confine your remarks to the record.

"MR. CANTRELL: Thank you. And would you instruct the jury to disregard that.

"THE COURT: Disregard the last statement.

"MR. CANTRELL: We also move for a mistrial.

"THE COURT: Denied."

Prior to this argument, defense counsel had told the jury:

"Dr. Grigson said that this year—or within the past year he has done 200 criminal examinations, and in the past, several thousand. And you have got to think, 'Wow, that guy knows what he's talking about.' But, you know, it was a miss on our part not to ask him who these examinations were for; the Defense or the State. And I am kicking myself still. And, of course, the District Attorney didn't ask him. But 200 in the last year . . . there is only 365 days in a year. The man says he has a private practice. I don't know what days . . . maybe Sundays and Saturdays he goes up there to his office. But he is an excellent witness."

The remarks of the State were invited by and in reply to argument of the defense counsel. The statement "I have heard him testify for the Defendant before" should not have been added; however, in view of the circumstances shown, harm, if any, was removed by the prompt action of the court in sustaining the objection and instructing the jury to disregard. Reversible error is not shown. *Pearce v. State,* Tex.Cr.App., 513 S.W.2d 539. *Elam v. State,* Tex.Cr. App., 518 S.W.2d 367.

Appellant's fifteenth ground of error reads:

"The court abused its discretion over appellant's objection and after hearing evidence during a *Jackson vs. Denno* hearing the confession of appellant and finding that said confession was voluntarily and freely given."

The only witnesses to testify at the hearing to determine the admissibility of the confession were Officer Gary Dale, to whom the confession was made, and appellant. According to Dale's testimony, after he arrested appellant he took him to the city hall, where Justice of the Peace John Cabaniss administered the warning provid-

ed in Art. 15.17, V.A.C.C.P. Judge Cabaniss' certificate reflecting the proceedings before him was admitted in evidence at the hearing, and is a part of the record. Dale later gave appellant the *Miranda* warning, reading it to him from his police card, and explaining to appellant his rights of counsel and silence as provided in said warning. This warning is also shown in the transcription of the testimony. Dale testified that he discussed with appellant the instant offense and other offenses with which appellant was charged. No force or violence of any kind was used, and no threats or promises were made appellant. On the fourth day following the arrest, after Dale had again advised appellant of his constitutional and statutory rights of counsel and silence, and without the use of any force, compulsion, threats or promises, appellant agreed to confess to the killing of deceased Abraham. At this time, in the interrogation room of the city jail, appellant voluntarily and freely related the events as stated in the written confession and Dale typed the statement as appellant talked. After it was typed, including the Miranda type warning in the commencing paragraph, Dale handed it to appellant, who testified he could read, and later Dale read it over to appellant, who made and initialled a few corrections before signing it.

Appellant testified, denying that his confession was freely and voluntarily given. He admitted being given the warning by Judge Cabaniss, but stated that Dale had not advised him of his rights, and that his request to Dale to see a lawyer was refused. As stated in his brief, "Appellant testified to being hit, kicked, dragged out of the car and stomped by Detective Dale prior to giving his confession." He said that "I signed it for one thing, that I didn't want my family involved, like I had already been threatened. I was tired of being beat on."

Appellant's testimony reflected that all of the abuse, threats, physical violence and other alleged misconduct leading to the giving of his confession was by Officer Dale, all of which was expressly denied by the officer. Compare with *Farr v. State,* Tex. Cr.App., 519 S.W.2d 876; *Sherman v. State,* Tex.Cr.App., 532 S.W.2d 634.

The conflicting testimony of Officer Dale and appellant created fact issues for the court to pass on, it being the sole judge at the hearing of the credibility of the witnesses and the weight to be given their testimony.[5] In his written fact findings, the court found that the appellant, after having been thoroughly warned of his constitutional and statutory rights, by a magistrate and by Officer Dale, voluntarily and freely waived such rights, and voluntarily, knowingly and freely executed the confession without the use of any force, coercion, persuasion or promises.

We find that the evidence supports the findings of the trial court, and that the court did not err in overruling appellant's motion to quash the confession and in admitting it in evidence. See *Mann v. State,* Tex.Cr.App., 525 S.W.2d 174; *Brantley v. State,* Tex.Cr.App., 522 S.W.2d 519; *Moore v. State,* Tex.Cr.App., 542 S.W.2d 664 (1976).

Appellant next contends that the court erred in refusing to grant a new trial because of a newly discovered witness who would support his defense of alibi.

The hearing on the appellant's amended motion for a new trial reflects that appellant knew of the existence of this witness prior to and at the time of the trial, but did not know where to locate her. Although appellant filed a motion for continuance, his inability to secure this witness was not urged as a ground therefor, and he did not seek any delay in the trial to obtain the witness' presence. He did not cause a subpoena to issue for the witness. He did not check the records of any major public utility other than the telephone company. The

**5.** Since the evidence before the jury also raised fact issues as to the voluntariness of the confession, the jury was instructed not to consider it unless it was found to have been voluntarily given beyond a reasonable doubt. Proper instructions as to voluntariness were given in the court's charge.

testimony of the witness would have been cumulative of other alibi testimony.

A motion for a new trial based on newly discovered evidence is addressed to the sound discretion of the court, and his ruling thereon should not be disturbed in the absence of a showing of a clear abuse of discretion. *Williams v. State,* Tex.Cr.App., 504 S.W.2d 477; *Hill v. State,* Tex.Cr.App., 480 S.W.2d 670. Appellant must show that the evidence was in fact newly discovered, that it was material, that the failure to discover it sooner or locate the witness was not due to a lack of diligence, that the new evidence is probably true, and a different result would probably be reached if the new evidence is introduced at a second trial. *Williams v. State,* supra; *Peak v. State,* Tex.Cr.App., 522 S.W.2d 907. A failure by appellant to establish any of the essential requirements would warrant the trial court in refusing to grant a new trial. See *Myers v. State,* Tex.Cr.App., 527 S.W.2d 307; *Ayala v. State,* Tex.Cr.App., 511 S.W.2d 284. Abuse of discretion is not reflected.

The judgment is affirmed.

Opinion approved by the Court.