**Daniel Gerrard SIMON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–81–0019–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1981.

Rehearing Denied Feb. 25, 1982.

William W. Burge, Houston, for appellant.

Molly Naylor, Houston, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

The appellant was convicted of aggravated robbery and sentenced to twenty years imprisonment. The question on this appeal is whether the appellant is entitled to a new trial based on newly discovered evidence.

At approximately 9:15 p. m., on July 20, 1979, three armed men robbed a Safeway supermarket. The appellant was subsequently arrested and charged with the crime. At the trial, three Safeway employees, eyewitnesses to the robbery, identified the appellant as one of the three armed men in the store. The first of these witnesses, Thomas Hart, was unable to positively identify the appellant, but the other two witnesses, Richard Garcia and Richard Clark, made positive identifications of the appellant as one of the robbers. The appellant based his defense on alibi testimony of eleven witnesses, but only three of such witnesses, shown to be close friends of the appellant, testified with respect to the appellant's whereabouts at the time of the robbery.

At the hearing on the appellant's motion for new trial, he denied being at the Safeway store at the time of the robbery, and he presented the testimony of two persons who had been customers in the store at the time of the robbery. Both of these "new" witnesses testified that the appellant was not one of the three armed men participating in the robbery.

Whether a new trial should be granted on the basis of newly discovered evidence is a matter within the sound discretion of the trial court, and its decision will be reversed only upon a showing of a clear abuse of discretion. *Ayers v. State*, 606 S.W.2d 936 (Tex.Cr.App.1980). *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976). The trial court's order overruling the motion for new trial on such grounds will not be disturbed unless the record shows:

(1) the newly discovered evidence was unknown or unavailable to the movant at the time of trial;

(2) the movant's failure to discover or obtain the evidence was not due to lack of diligence;

(3) the new evidence was admissible and was not merely cumulative, corroborative, collateral or impeaching, and

(4) that its materiality was such as would probably bring about a different result on another trial,

*Ayers v. State, supra.*

The State concedes that the appellant met the first and third requirements of this test, but it argues that the appellant did not establish that he had exercised due diligence or that the newly discovered evidence would probably bring about a different result at a new trial.

Arguing the appellant's lack of diligence in locating the new witnesses to the robbery, the State asserts it was not until after appellant's conviction that he made any real effort to obtain their testimony. In support of its position the State cites *Weeks v. State*, 134 Tex.Cr.R. 410, 115 S.W.2d 649 (1938), in which a defendant, convicted for the theft of a sow, sought a new trial based upon newly discovered testimony indicating that the defendant was the true owner of the sow. The Court of Criminal Appeals held that the defendant had not shown due diligence in the discovery of the new witnesses because all were his close neighbors.

The *Weeks* case is distinguishable because the appellant in the case at bar had no reasonable basis, prior to trial, to know that there were other eyewitnesses to the crime. The two new witnesses were not named in the police offense report, and the prosecutor did not know their names before or during trial. Both the appellant and his father testified at the motion for new trial that they were unaware prior to trial of any eyewitnesses other than those subpoenaed by the State, and the appellant's father testified that it was only after distributing handbills within a two mile radius of the store that he was able to obtain the names of other witnesses.

One of the appellant's attorneys at the trial testified at the hearing on the motion for the new trial that he had investigated the case and that he could not, prior to trial, determine that there were any witnesses to the robbery, other than the three store employees subpoenaed by the State, who had attended the police lineup. He had tried to talk to two of the State's witnesses prior to

trial, but had been frustrated by their refusal to discuss the robbery with him. He did talk to the third State witness, Richard Clark, who promised to furnish him with the names of other employees in the store; however, that witness later refused to talk with him and never supplied the names. He knew there were other employees in the store at the time of the robbery, but he had no knowledge of any other person in the store, either as a customer or employee, who had been an actual witness to the robbery. It did not occur to him prior to trial to distribute circulars seeking additional witnesses to the robbery. Although he had twelve years experience in the practice of criminal law, he had never heard of circulars being used in this way. He had hired an investigator to talk with people, including store employees and other potential witnesses, but this did not produce any information. The one State witness with whom he talked did mention that there were other employees in the store at the time of the robbery, but that witness was not aware of any person who actually witnessed the robbery other than the witnesses subpoenaed by the State. The offense report did not list the names of any witnesses other than those subpoenaed, nor did it give any clue that there were any other eyewitnesses to the robbery.

Thus, the record clearly reflects that it was only after the hearing of the testimony at trial that it occurred to the appellant that there might have been other eyewitnesses to the robbery. Although there were facts known to the appellant and his counsel prior to trial that indicated the possibility of additional witnesses to the robbery, the appellant's efforts to locate such witnesses simply did not prove successful. The fact that the appellant and his counsel were not as resourceful in their investigation prior to the appellant's conviction as they were afterward does not compel the conclusion that the appellant failed to exercise reasonable diligence. See, *Pilkington v. State*, 119 Tex.Cr.R. 304, 43 S.W.2d 942 (1931).

The State also contends that the appellant failed to establish that the newly dis-

covered testimony would probably bring about a different result at another trial. The State argues that its three eyewitnesses were in a better position to observe and identify the robber than the witnesses testifying for the appellant at the motion for new trial.

Two of the State's witnesses, Thomas Hart and Richard Garcia, had been threatened by the robber with a sawed-off shotgun, and both stood quite close to him. However, Hart was unable to positively identify the appellant as one of the robbers, even though he had tentatively identified him in a police line-up. He testified that his eyes were focused more on the shotgun than on the robber. Garcia positively identified the appellant as one of the participants, but the record indicates some uncertainty in his identification at the time of the police line-up. The third witness, Richard Clark, was standing farther away, but he positively identified the appellant as the robber with the shotgun. It was shown, however, that Clark had earlier identified another man's photograph as depicting the robber.

The two eyewitnesses called on behalf of the appellant at the hearing on the motion for new trial had been farther away from the robber, but they had not been directly involved in the robbery or otherwise distracted from a clear observance of him.

Marshall Johnson testified that he had observed the robber from a distance of fifteen to twenty feet while crouching down over his two-year-old daughter. He did not talk to the police after the robbery because he had waited around for about thirty minutes, and when the police never came, he finally left. He did not know that anybody had been accused of the robbery, and it was only after he received a circular that he voluntarily called the appellant's father and looked at the appellant's photograph. He was positive that appellant was not the person with the shotgun.

Gina Sandells, the second witness, testified that she was sitting in a car in the Safeway parking lot at the time of the robbery. She saw two men run from the store, one of whom had blond hair and was carrying a shotgun. She observed the man for about five seconds as he ran by her car, and he was about six feet away from her. She was positive that the appellant was not that person.

The identification of the appellant as the blond robber with a shotgun was the central issue at the trial, and any evidence regarding his identification was clearly material to the outcome of the case. Although the State contends that the three Safeway employees were closer to the robbers than the two customers and thus had better opportunity to observe them, the record does not compel that conclusion. The testimony of Marshall Johnson shows that he had a clear view of the robber with the shotgun and was able to observe him for some time.

Q. Did you see all three of the robbers?

A. Yes, I did.

Q. Would you tell the Judge what you saw in terms of where they went and what kind of weapons they had?

A. Okay. When they first came in, the first one came, walked around the courtesy booth, jumped up on the counter and pulled out a shotgun.

Q. Would you describe that person?

A. He was about twenty-two, twenty-three years old, muscular, chunky, about medium height with blonde hair, had a red bandanna tied around his forehead.

\*     \*     \*     \*     \*     \*

Q. Did you during the robbery, did you have an opportunity to see the blonde man carrying the shotgun from a fairly close distance?

A. Yes. I was probably fifteen, twenty feet away.

Q. The store is well lighted?

A. Yes, it was well lighted. I could see real good.

Q. How long did you have an opportunity to view him?

A. I viewed him for approximately fifteen minutes.

Q. Where did you stay during the robbery? What did you do?

A. As I saw him come in—as I said before, I had my little girl there—I put her down where she was between the man with the shotgun and the basket. I'm sorry, on the other side of the basket. I crouched down in front of the basket and started watching the man with the shotgun.

Q. Were you able to view the man with the shotgun, view his face all during the robbery?

A. Yes, I was. He was standing catty-cornered on the counter, and I could get a clear view of his face the whole time.

\* \* \* \* \* \*

Q. (By Mr. Burge) Would you tell the Judge after viewing this robbery, viewing the person with the shotgun, is Dan Simon the person with the shotgun?

A. No, he's not.

Q. Are you absolutely sure of it?

A. Yes, I'm sure of it.

The trial judge was, of course, in a better position than this court to determine the credibility of the new evidence, having heard all the witnesses' testimony and observed their demeanor, both at the trial and at the hearing on the motion for new trial. *Williams v. State,* 504 S.W.2d 477, 483 (Tex. Cr.App.1974). Accordingly, it is not the function of this review to substitute this court's fact finding judgment for that of the trial court. *Eddlemon v. State,* 591 S.W.2d 847, 850 (Tex.Cr.App.1979).

It was appropriate for the trial court to consider the relative distances of the witnesses from the blond robber in considering the probable impact of the new testimony on another trial. The trial court also was entitled to question the accuracy of the new witnesses' recollection of the blond robber's appearance in view of their testimony that they had not noticed that he had a complexion problem. Indeed, the record reflects that this singular discrepancy may have weighed heavily on the trial court's decision to deny the appellant's motion for new trial:

THE COURT: The thing that's kind of remarkable with me, when the initial description was given by all the people who had a fairly, what appeared to be a fairly substantial look was they noted the problem with the acne. I think that you will recall at the twenty-four hour hearing the remark that I made from hearing the substance in the report read and then my visual observation of the defendant, how remarkable the two were. We talked about that, as you recall. It's difficult for me to see how that situation can be so opposite and people who claim they got a good look—

MR. BURGE: Judge, neither one of those witnesses said that the person did not have an acne problem. They just didn't notice it.

THE COURT: Well—

MR. BURGE: And there is a difference.

THE COURT: I understand.

MR. BURGE: Especially nine months later.

THE COURT: But if it had been as pronounced as that one was, they would have noticed it.

Well, I'm going to overrule the Motion for New Trial.

On the other hand, the fact that some of the State's witnesses at the trial may have been closer to the robber and noticed that his complexion was marked by acne did not, in itself, justify the trial court's rejection of the new testimony as being probably untrue. The testimony of the new witnesses was clear, direct, and positive, and was completely free of internal inconsistencies and contradictions; except as noted, there was nothing in this testimony which created any reasonable suspicion as to its truth and accuracy. The State made no effort to discredit their testimony, and because it tended to disprove the State's contention that the appellant was one of the participants in the robbery, the receipt of such testimony on another trial would probably produce an additional element of doubt in the minds of the jurors as to the appellant's identity.

The testimony presented by the appellant established prima facie the essential requirements for a new trial, and should there be any doubt as to whether such new testimony would be effective on a new trial, that doubt must be resolved in favor of the appellant. *Henson v. State*, 150 Tex.Cr.R. 344, 200 S.W.2d 1007, 1014 (1947).

> No fixed rule or rules can be announced whereby it may be said that a trial court has or has not used its discretion in overruling a motion for new trial upon newly discovered testimony. Each case must be determined in the light of the peculiar facts and circumstances there presented. One controlling factor must be recognized here, as in all criminal cases, which is: the doctrine of reasonable doubt. If doubt exists between issues, that which is favorable to the accused should be adopted. Such is a basic principle of our jurisprudence.

200 S.W.2d 1014–1015.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.